**Erwin J. SPENCE, Jr., Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY, American General Corporation, Thomas K. Fitzsimmons and William B. Loden, Defendants.**

**No. 89–CV–158S.**

United States District Court, W.D. New York.

Aug. 26, 1992.

---

**654**

Christopher A. Spence, Buffalo, N.Y., for plaintiff.

Thomas S. Gill, Saperston & Day P.C., Buffalo, N.Y., for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Plaintiff Erwin J. Spence, Jr. ("plaintiff"), moves for partial summary judgment and for an order striking defendants' respective Answers for abuse of discovery. Defendants cross-move for summary judgment against all of plaintiff's causes of action. The parties' respective summary judgment motions are brought pursuant to Fed.R.Civ.P. 56. Plaintiff's motion to strike defendants' Answers is brought pursuant to Fed.R.Civ.P. 37(b)(2)(C).

Within the context of these summary judgment motions, defendants move for sanctions against plaintiff, pursuant to Fed.R.Civ.P. 11, for withholding evidence of a factual nature. Defendants also move to strike several paragraphs of various affidavits plaintiff has submitted in opposition to defendants' motion for summary judgment, as not being based on the personal knowledge of the affiant, in contravention of Fed.R.Civ.P. 56(e).

Plaintiff has filed a six-count Amended Complaint, asserting causes of action for intentional tort, wrongful discharge, violation of the Age Discrimination in Employment Act ("ADEA"), and violation of the New York State Human Rights Law. Plaintiff also requests punitive damages for defendants' alleged intentional tort, and double damages for defendants' alleged willful violation of the ADEA. This case was originally assigned to Judge Curtin after its filing on February 2, 1989. It was transferred to this Court by Order dated October 12, 1990.

This Court has jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332 and the federal claim raised pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623(a). New York law controls with respect to the issues outside the coverage of the ADEA.

This lawsuit arises out of plaintiff's condition of total disability, allegedly resulting from defendants' pattern of intimidation and harassment which resulted in plaintiff's removal from his employment on instructions from his physician.

From 1977 through November 30, 1988, plaintiff was branch manager of Maryland Casualty Company's ("Maryland Casualty") Buffalo, New York office. In his Amended Complaint, plaintiff alleges that from April 1987 through November 1988, defendant Thomas K. Fitzsimmons ("Fitzsimmons") and defendant William B. Loden ("Loden"), while in their respective management positions as officers and employees of Maryland Casualty, and as plaintiff's direct supervisors, engaged in a systematic course of conduct toward plaintiff that was threatening, intimidating and harassing, and not directed at improving his job performance. Further, with plaintiff's age as their primary motivation, plaintiff contends that defendants' conduct toward him was intentionally calculated to cause him to leave his employment prematurely and involuntarily, through either his resignation or early retirement.

Plaintiff also alleges that since defendants' conduct was intentional and resulted in his total disability, that it constituted a wrongful discharge for which he is entitled to punitive damages. Plaintiff also contends that since defendants' conduct was willfully and unlawfully motivated by his age, in violation of 29 U.S.C. § 623(a)(1), that he is entitled to double damages under the ADEA. On his six causes of action, plaintiff seeks total damages of $6,000,-000.00.

*Plaintiff's Partial Summary Judgment Motion*

Plaintiff has moved for partial summary judgment seeking to collect past and future long-term disability benefits allegedly due

him under a Long Term Disability Plan provided to salaried employees of Maryland Casualty on May 25, 1989, by American General Group Insurance Company.[1] Plaintiff alleges that under the May 25, 1989 plan, he is entitled to continued receipt of total disability benefits from May 29, 1989, the date from which Maryland Casualty originally approved his disability benefits, through his sixty-fifth birthday on July 27, 1993.

In opposition to plaintiff's motion for partial summary judgment, defendants contend that the Long Term Disability Plan that plaintiff is covered under, is not the May 25, 1989 Plan, but is the Plan that was provided to salaried employees of Maryland Casualty in August of 1987. Defendants assert that under the 1987 Plan, long-term disability benefits cease when a covered employee voluntarily elects to receive retirement benefits. Defendants further contend that since plaintiff voluntarily retired on May 9, 1989 when he requested that he begin receiving pension benefits, that he is subsequently ineligible for long-term disability benefits.

Defendants also assert that plaintiff is not entitled to summary judgment on the issue of long-term disability benefits, since plaintiff has failed to properly plead a cause of action under the Employee Retirement Income Support Act, 29 U.S.C. § 1001, *et seq.*, or in the alternative for breach of an insurance contract. Defendants further assert that none of the named defendants are parties from whom damages regarding insurance benefits may properly be collected. Finally, defendants seek sanctions against plaintiff and his attorneys for failing to offer evidence to the Court which defendants allege demonstrates a factual issue concerning the disability policies in question.

In reply, plaintiff reasserts that his retirement from Maryland Casualty was not voluntary, but was coerced by defendants. Plaintiff further contends that the terms of the two Long Term Disability policies are not in conflict, since they both provide for his continued receipt of long-term disability benefits even after he retired. Plaintiff argues, therefore, that he is entitled to continued receipt of benefits under whichever plan effectively covers him. Finally, plaintiff contends his Amended Complaint adequately prays for damages of disability insurance benefits, and that defendants were on adequate notice of his alleged disability through several other sources.

### Defendants' Summary Judgment Motion

Defendants have moved for summary judgment seeking dismissal of plaintiff's action against them in its entirety. Defendants allege that plaintiff's claim of harassment, while an employee of Maryland, fails to state a cause of action for either intentional tort or wrongful discharge, since in New York worker's compensation is the exclusive remedy for disability caused by job-related stress. Defendants further argue that their conduct has not been sufficiently outrageous to support an action for an intentional tort, and that as an employee-at-will plaintiff does not possess a cognizable action under New York law for wrongful discharge, prima facie tort, or intentional infliction of emotional distress.

Defendants also assert that they are entitled to summary judgment on plaintiff's ADEA claims because plaintiff was neither terminated nor constructively discharged, he has failed to provide either direct or indirect evidence sufficient to allege a prima facie case of age discrimination under the ADEA, and further that since plaintiff alleges he was totally disabled, and therefore unable to work, he is ineligible for any ADEA remedy. Finally, defendants allege that total disability manifested by psychic injury is not compensable under New York law, and therefore plaintiff may not recover damages under New York's Human Rights Law.

---

1. American General Group Insurance Company is a separate entity, distinct from defendant American General Corporation. Defendants assert in their January 21, 1992 Memorandum of Law that American General Group Insurance Company was a subsidiary of American General Corporation, until American General Corporation sold it on December 31, 1989. American General Group Insurance Company is not a defendant in this action.

In opposition to defendants' motion for summary judgment, plaintiff responds that due to his successful job performance, defendants' course of conduct toward him was unwarranted and was solely motivated by plaintiff's age.

### Defendant American General Corporation's Summary Judgment Motion

Defendant American General Corporation ("American General"), also moves for summary judgment separately. American General claims that it did not interfere with the daily operations of Maryland Casualty which was solely responsible for dealing with its employees. American General argues, therefore, that it is not responsible for the actions of the management of Maryland Casualty. American General further asserts that on May 25, 1989, it sold a solvent Maryland Casualty to a purchaser who knew or should have known of plaintiff's suit prior to the purchase.

Within the context of the above summary judgment motions, defendants have moved for sanctions against plaintiff and plaintiff's counsel, pursuant to Fed. R.Civ.P. 11. Defendants allege that plaintiff purposefully withheld evidence of a factual nature, concerning the two disability Plans in question, in bringing plaintiff's motion for partial summary judgment. Plaintiff responds that defendants' counsel represented to him that he was covered under the May 25, 1989 Plan. In addition, defendants have moved to strike several paragraphs of several of the affidavits plaintiff has submitted in opposition to defendants' motion for summary judgment. Defendants contend these paragraphs are not based upon the personal knowledge of the respective affiants.

### Other Motions

Plaintiff also moves for an order striking defendants' respective Answers to his Complaint, pursuant to Fed.R.Civ.P. 37(b)(2)(C). Plaintiff alleges that defendants have willfully failed to provide several documents, personnel files, medical records, and deposition testimony as ordered by this Court and by the Magistrate Judge. Plaintiff further alleges that he has been and will continue to be irreparably prejudiced by the absence of these materials.

Defendants respond that plaintiff's contentions have been previously and finally decided by the Magistrate Judge, and therefore are presently improperly before this Court. Defendants further respond that plaintiff's allegations are without merit since they are vague and misleading, and that defendants have complied with all prior discovery orders. Finally, defendants claim that plaintiff should not be entitled to the relief he seeks regarding this motion since plaintiff is guilty of noncompliance with prior discovery orders.

For the reasons discussed below, this Court hereby DENIES plaintiff's motion for partial summary judgment; hereby DENIES defendants' motion for sanctions; hereby GRANTS IN PART and DENIES IN PART defendants' motion to strike several paragraphs of several affidavits submitted by plaintiff in opposition to defendants' motion for summary judgment; hereby GRANTS defendants' motion for summary judgment on plaintiff's age discrimination claims under the ADEA and New York Human Rights Law; hereby GRANTS defendants' motion for summary judgment on plaintiff's intentional tort and wrongful discharge claims; hereby GRANTS American General Corporation's motion for summary judgment; and hereby DENIES plaintiff's motion to strike defendants' respective Answers.

### FACTS

### Plaintiff's Employment as Branch Manager

Plaintiff began his career with Maryland Casualty on June 16, 1950. From 1977 through December 1, 1988, plaintiff was the manager of Maryland Casualty's Buffalo, New York office. From December of 1988 through January of 1989, Loden was Director of Marketing and Branch Operations for Maryland Casualty's Mid–Atlantic Region, which included the Buffalo office. In that position Loden was plaintiff's direct supervisor. From February of 1984 through January of 1989, Fitzsimmons was Regional Vice President in charge of Mary-

land Casualty's Mid–Atlantic Region. In that position Fitzsimmons was Loden's direct supervisor.

Plaintiff alleges that Fitzsimmons and Loden, in their capacities as supervisors, engaged in a course of conduct that was motivated by plaintiff's age, with the intent to cause plaintiff to remove himself from his employment at Maryland Casualty through either early retirement or resignation. Plaintiff further alleges that this course of conduct was manifested through a series of incidents, in which either Fitzsimmons, or Loden, or both, intimidated plaintiff in pursuit of their intended result.

In the first of these incidents, in April of 1987, plaintiff was criticized by Loden during a review of the Buffalo branch office. Plaintiff was reprimanded by Loden for his unpreparedness for the review, which plaintiff alleges was due to Loden's assistant providing him with incorrect guidelines. This "reprimand" was "confirmed" in writing by a follow-up memorandum from Loden to plaintiff.

In June of 1987, during a meeting with Loden and other members of the Buffalo branch, Loden publicly belittled plaintiff and the suggestions he offered at the meeting. Loden immediately followed the incident with a June 25, 1989 correspondence to plaintiff, in which Loden accused plaintiff of abdicating his responsibilities in the management of the Buffalo branch.

In July of 1987, Loden told plaintiff that "because of [plaintiff's] age [Loden] knew it would be difficult for [plaintiff] to conform" to Loden's style of management. In September of 1987 while on vacation, plaintiff received a letter from Loden demanding increased production goals during the month. Plaintiff alleges that Loden sent the letter with full knowledge of plaintiff's vacation and consequent inability to timely address the demands in the letter.

In a meeting in Buffalo in November of 1987, Loden went into a tirade, shouting obscenities at plaintiff and his staff. Loden threatened to terminate plaintiff and his staff, both at the meeting and in a follow-up letter of November 5, 1987.

Plaintiff asserts that on January 22, 1988, Fitzsimmons and Loden taunted him by suggesting that he was "over the hill" and forgetful, blaming plaintiff for making a wrong turn and for Fitzsimmons' leaving his briefcase at the hotel.

On February 3, 1988, plaintiff alleges that Loden berated his overall job performance, threatened him with the loss of his job, and scheduled an April 1988 review. Loden informed plaintiff · that he would have no qualms over terminating a person of plaintiff's age. The day after this conversation, plaintiff became ill and was unable to attend work. The next day plaintiff consulted his physician who informed plaintiff that he had elevated blood pressure, and prescribed medication and regular visits to the doctor's office in order to monitor plaintiff's health.

Subsequent to the April review, plaintiff informed Loden that he was physically ill as a result of the series of prior "intimidating letters and interviews" from Loden. Loden allegedly responded "good, that's what I intended." Plaintiff further alleges that in early November of 1988, Fitzsimmons and Loden publicly ridiculed his presentation at a meeting of branch managers.

Finally, all branch managers received a telefaxed letter on November 28, 1988, scheduling a meeting in Baltimore in December. The letter contained a postscript directed only at plaintiff, informing him of the necessity that he remain in Baltimore for a special meeting with Loden. In anticipation of the meeting and of an audit of the Buffalo branch office, to be performed in his absence, plaintiff telephoned Loden. Loden refused to offer any further information about the meeting, only warning plaintiff about plaintiff's blood pressure and a potential heart attack. As a result of Loden's "sarcastic abuse," plaintiff became "even more agitated and upset," and visited his physician who allegedly prescribed bed rest and forbade any travel.

Plaintiff alleges that as a result of the aforementioned series of events, he has been medically diagnosed as totally disabled, with his disability commencing on

November 30, 1988 and continuing through the present date.

In January of 1989, William C. Alexander, II, then Senior Vice President of Branch Operations for Maryland Casualty, "demoted Fitzsimmons from Regional Vice President and implemented ... a company-wide change which removed Loden from any supervisory responsibilities over Branch Managers." Alexander's actions were based upon his review of a report from Maryland Casualty's Employee Relations Department, which was initiated by a complaint against Loden by another branch manager.

*The Long–Term Disability Policies*

In 1987 Maryland Casualty issued a Long Term Disability Plan (LTD Plan 1) to its salaried employees, through American General Group Insurance Company.

On April 11, 1989, Maryland Casualty's Benefits Manager wrote to plaintiff, informing him of his eligibility for application for long-term disability benefits, and enclosing an application form.

On May 9, 1989, plaintiff wrote Maryland Casualty's Benefits Manager, requesting that he begin receiving his pension benefits. Defendants allege that plaintiff's application for long-term disability benefits was received by the American General Insurance Group in June of 1989. Plaintiffs allege that any delay between his receipt of the application on April 11, 1989 and his submission of the application in June 1989 was due to necessary administrative delays in complying with the application's requirements for physicians' reports.

On May 25, 1989, Maryland Casualty issued a long-term disability policy to its salaried employees through American Casualty Insurance Group (LTD Plan 2). Plaintiff contends that he is covered under LTD Plan 2.

In its September 6, 1989 correspondence, American General Group Insurance Company informed plaintiff that his claim for long-term disability benefits had been approved. However, in that same correspondence, plaintiff was also informed that due to his election of retirement benefits that

under the effective long term disability insurance policy, LTD Plan 1, that plaintiff's monthly disability benefits ceased as of the date of his effective election of retirement benefits.

On October 21, 1991, defendants' counsel wrote plaintiff's counsel, enclosing a copy of LTD Plan 2 and offering a possible interpretation of the policy concerning disability and retirement benefits. The letter also addressed several issues regarding employees' causes of action under New York law. On November 1, 1991, defendants' counsel again wrote plaintiff's counsel, enclosing a copy of LTD Plan 1, and informing plaintiff's counsel that LTD Plan 1, not LTD Plan 2, applied to plaintiff. On December 10, 1991, defendants' counsel wrote plaintiff's counsel requesting that plaintiff withdraw his summary judgment motion because of LTD Plan 1, and the limitations of plaintiff's remedies under New York law. Plaintiff's counsel refused to do so. Defendants claim that plaintiff failed to inform this Court about their counsel's two letters and plaintiff's knowledge of LTD Plan 1, in bringing his partial summary judgment motion.

*The Discovery Process*

During the discovery process, the parties engaged in motion practice to resolve mutually alleged noncooperation between the parties and noncompliance with several discovery orders. On September 24, 1991, this Court issued an order, referring the disposition of "discovery and discovery related matters" to Magistrate Judge Leslie G. Foschio. (Order, J. Skretny, CIV–89–158S, September 24, 1992).

On October 21, 1991, the Magistrate Judge issued an Order, deciding three outstanding motions to compel submitted by plaintiff, and one outstanding motion to compel submitted by defendants. (Order, M.J. Foschio, CIV–89–158S, dated October 21, 1991).

First, the Magistrate Judge limited the production of documents from defendants to "the operational plan or performance plan files for the Mid–Atlantic region of the Maryland Casualty Company for the years 1983 through 1988 only." Next, the Magis-

trate Judge denied plaintiff's motion to compel production of documents defendants agreed to provide in their answers to plaintiff's March 1, 1990 Interrogatories. The Magistrate Judge found that, in her affidavit of May 16, 1991, Jana R. Barrett (Maryland Casualty's counsel) adequately complied with this Court's Order of April 12, 1991, requiring Maryland Casualty to state the factual basis relied upon by defendants in their prior statement that no such documents as requested by plaintiff exist. Finally, the Magistrate Judge denied plaintiff's motion to compel compliance with prior court orders. In this regard, the Magistrate Judge found that the transcripts of the parties' status conferences before this Court did not contain specific court orders directing certain discovery, and further that at an October 7, 1991 conference with the Magistrate Judge, the parties represented that all remaining depositions had been scheduled in compliance with this Court's March 24, 1991 Order that discovery be completed by October 31, 1991.

On December 6, 1991, the Magistrate Judge issued a Decision and Order. This Decision and Order decided several motions brought by plaintiff. These included a motion for reconsideration of the Magistrate Judge's Order of October 21, 1991; a motion for an extension of the discovery deadline; and a motion for an order directing defendants to provide previously ordered discovery within thirty days after entry of the requested order. (Decision and Order, M.J. Foschio, 89–CIV–158S, December 6, 1991).

In his Decision and Order, the Magistrate Judge denied plaintiff's motion for reconsideration of his October 21, 1991 Order, and denied plaintiff's motion for an extension of the discovery period. The Magistrate Judge further ordered that defendants were "to provide all outstanding discovery no later than January 6, 1992 and to further file with the court an affidavit stating that all discovery has been provided, or if not able to be provided, the reasons therefore no later than January 6, 1992." Finally, in response to plaintiff's allegations concerning the veracity of the

assertions in the May 16, 1991 affidavit of Jana R. Barrett, the Magistrate Judge ordered that "[d]efendants are directed to file a supplemental affidavit sworn to by Ms. Barrett outlining any and all searches for documents and the results of such searches that have been conducted since the date of the original affidavit."

Plaintiff now moves this Court for an order striking defendants' respective Answers for their willful failure to comply with this Court's prior discovery Orders. In his affidavit in support of plaintiff's motion, plaintiff's counsel makes reference to several incidents that occurred prior and subsequent to the Magistrate Judge's October 21, 1991 Order. In addition, plaintiff's counsel asserts that defendants have failed to comply with the Magistrate Judge's directive in his December 6, 1991 Decision and Order, that defendants provide all outstanding discovery no later than January 6, 1992.

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides in pertinent part that summary judgment is warranted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under the Rule, the moving party has the burden of showing that a genuine issue as to any material fact is absent. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." 398 U.S. at 158–59, 90 S.Ct. at 1609.

When a movant makes a showing of the essential elements of its case, sufficient to demonstrate that a factfinder could find in its favor, then its opponent must counter with evidence sufficient to demonstrate that "a reasonable jury could return a verdict" in its favor to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548,

2552, 91 L.Ed.2d 265 (1986). However, a summary judgment motion will not be defeated merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), "or on the basis of conjecture or surmise." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

This Court has specifically noted that "courts should not be reluctant to grant summary judgment in appropriate cases since '[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims.'" *Maier–Schule GMC, Inc. v. General Motors Corp.,* 780 F.Supp. 984, 987 (W.D.N.Y. 1991), quoting *Celotex Corp. v. Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

■ Under the criteria articulated above, a district court "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## DISCUSSION

This Court notes that its opinion excludes portions of the discussion of plaintiff's motion to strike defendants' Answers, and portions of the discussion of defendants' motion to strike several paragraphs of certain affidavits submitted by plaintiff. These portions, which are contained in the original Decision and Order filed on August 26, 1992, are excluded due to their fact specificity to particular affidavits and discovery issues of limited significance.

In the interest of logic, this Court will discuss the instant motions in order of their logistical consequences to the remaining motions.

A. *Plaintiff's Motion to Strike Defendants' Answers*

Plaintiff moves for an order striking defendants' respective Answers to his Amended Complaint; pursuant to Fed. R.Civ.P. 37(b)(2)(C). In his affidavit in support of plaintiff's motion to strike, plaintiff's counsel initially asserts a number of alleged discovery abuses by defendants which occurred prior to this Court's Order of March 24, 1991 directing the Magistrate Judge to handle all discovery matters, and also prior to the Magistrate Judge's Order of October 21, 1991, which decided several outstanding motions to compel. Plaintiff's counsel also asserts that defendants failed to produce the Maryland Casualty Mid–Atlantic Region information for the years 1983–1988 as ordered by the Magistrate Judge in his October 21, 1991 Order. Finally, plaintiff's counsel asserts that defendants failed to provide information required to be disclosed by the January 6, 1992 deadline established by the Magistrate Judge in his December 6, 1991 Decision and Order.

Plaintiff contends that these abuses of discovery prejudiced him, since he was forced to proceed through subsequent discovery without the requested information which would have guided further discovery demands. Plaintiff specifically claims that the information regarding other Mid–Atlantic branch managers which defendants allegedly failed to disclose, will hinder his ability at trial to show disparate treatment based upon age and not performance.

The Magistrate Judge's October 21, 1992 Order contains the conclusory language that "[t]herefore, except for the additional discovery as directed above [the 1983–1988 documents from Maryland Casualty], all discovery requests appear to have been complied with." Similarly, at the close of his December 6, 1991 Decision and Order denying the plaintiff's motion for reconsideration and for an extension of discovery, the Magistrate Judge concluded that "[f]ollowing Defendants' compliance with this order, no further discovery is necessary."

This Court finds that the Magistrate Judge's Order of October 21, 1991, implicitly considered and resolved all discovery disputes existing between the parties prior to October 21, 1991, and found that all discovery requests had been adequately complied with. Therefore, this Court finds no abuse of discovery on the part of defendants, for any discovery disputes occurring

prior to the Magistrate Judge's Order of October 21, 1991. Moreover, this Court finds no abuse of discovery on the part of defendants, for any discovery disputes occurring subsequent to the October 21, 1991 Order of the Magistrate Judge.

Despite the conclusions of this Court based, in part, upon the findings of the Magistrate Judge summarized above, this Court also recognizes that a party's ultimate compliance with the discovery process may include willful or bad faith disregard of a court's discovery orders en route to the resolution of discovery disputes. Therefore, this Court will evaluate plaintiff's allegations against defendants under the criteria required for the application of the remedy plaintiff requests, the striking of a pleading.

■ Federal Rule of Civil Procedure 37(b)(2)(C) provides in pertinent part, that if a party fails to obey an order to provide or permit discovery, the court may issue "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Under this Rule, the imposition of sanctions is within the discretion of the district court. *John B. Hull, Inc. v. Waterbury Petroleum Products*, 845 F.2d 1172, 1176 (2d Cir.1988).

■ However, "[i]t is well settled law in this Circuit that '[d]ismissal under Fed. R.Civ.P. 37 is a drastic penalty which should be imposed only in extreme circumstances.'" *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.1986), quoting *Israel Aircraft Indus., Ltd. v. Standard Precision*, 559 F.2d 203, 208 (2d Cir.1977). The extreme circumstances contemplated by the Second Circuit require that the "sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault'" of the party. *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734 (2d Cir.1987), quoting *Salahuddin*, 782 F.2d at 1132.

■ Under the standards articulated above, the function of a district court is to determine whether the party moved against has demonstrated a "flagrant disregard of court orders," *John B. Hull, Inc.*, 845 F.2d at 1177, before it may grant a drastic remedy such as dismissal, judgment by default, or striking an entire pleading, which would result in the same dispositive outcome.

The Second Circuit has found a flagrant disregard of court orders to occur, for example, where a party ignores a court order for production of documents, and instead pursues settlement discussions, *Luft v. Crown Publishers, Inc.*, 906 F.2d 862 (2d Cir.1990); where a party refuses to comply with a court order directing it to answer all interrogatories, not just select portions of some interrogatories, *John B. Hull, Inc.*, 845 F.2d at 1174–76; where a party failed to answer discovery demands requesting an itemization of damages claimed, *Id.;* and for repeated obstructionist conduct over a prolonged period of years, continuing with the party's refusal to answer questions at his deposition, in direct defiance of the Magistrate Judge's directive. *Jones*, 836 F.2d at 735.

■ In the instant case, plaintiff complains of several incidents, as willful and bad faith violations of existing court ordered discovery. However, this Court finds that none of the incidents cited by plaintiff sufficiently demonstrate willfulness, bad faith, or fault by defendants to warrant striking of a pleading. Instead the incidents reported only relate delays in discovery, the disputed 1983–1988 Maryland Casualty documents addressed in Ms. Barrett's two affidavits, and deposition testimony. All of these matters were adequately remedied to the satisfaction of the Magistrate Judge, and none of these matters approach the severity of the noncompliance illustrated in the cases cited above. Therefore, this Court refuses to adopt a party's recitation of a litany of discovery problems as sufficient evidence of willfulness and bad faith in noncompliance with discovery orders.

Similarly, as defendants correctly contend, many of plaintiff's allegations are vague, referring only to unspecified documents and "court ordered disclosure." This Court is unable to determine if discovery orders were violated if the accusing party cannot specify the items of noncompliance. In fact, as the Magistrate Judge determined, a review of court minutes indicated that certain of the materials that plaintiff sought to discover by his motions to compel, were never directed to be produced by this Court's order.

Based upon the foregoing considerations, this Court does not find the extreme circumstances of willful or bad faith noncompliance with this Court's and the Magistrate Judge's discovery Orders by defendants. Consequently, this Court declines to utilize the extreme sanction of striking defendants' Answers. Therefore, plaintiff's motion to strike defendants' respective answers, pursuant to Fed.R.Civ.P. 37(b)(2)(C), is denied.

### B. *American General's Summary Judgment Motion*

In addition to joining all other defendants in their cross-motion for summary judgment seeking dismissal of plaintiff's action against them in its entirety, American General also moves for summary judgment separately and independently of the remaining defendants. In its motion for summary judgment, American General contends that it is not liable for any of the alleged harms suffered by plaintiff for two reasons.

First, it argues that from 1964 when it purchased Maryland Casualty, through May 25, 1989 when it sold it, that Maryland Casualty remained its wholly-owned subsidiary. Further, that from its acquisition through its sale, Maryland Casualty maintained its own board of directors, with at most, three of the ten to twelve directors also being either employees, officers, or directors of American General. Although

there were quarterly reports from officers of Maryland Casualty to officers of American General, American General contends that it did not interfere with the daily operations of Maryland Casualty, including Maryland Casualty's business operations and its dealings with its employees, including plaintiff. Defendants assert that plaintiff was an employee of Maryland Casualty, not of American General. Under these set of facts, American General argues that as a corporate parent that was not a participant in the daily operation of its subsidiary, it is not liable for the subsidiary's alleged tortious acts toward employees of the subsidiary.

Second, American General asserts that on May 25, 1989, it sold Maryland Casualty to Zurich Insurance Company and to Zurich Holding Company of America, Inc. ("Zurich"). American General asserts that at the time of sale, Maryland Casualty was solvent and capable of paying plaintiff's claim, and that Zurich knew, or should have known, of plaintiff's lawsuit against Maryland Casualty. Under these set of facts, American General argues that its liabilities deriving from its relationship with Maryland Casualty, if any, ended with its sale of Maryland Casualty to Zurich.

On January 30, 1992, pursuant to Local Rule 25, American General filed its Statement of Facts Not at Issue in connection with its summary judgment motion. This statement of nondisputed facts essentially recited the factual circumstances summarized above. Plaintiff has made no submissions in opposition to American General's motion. Furthermore, as the nonmoving party, plaintiff did not submit a statement of material facts as to which it contends there exists a genuine issue to be tried, pursuant to Local Rule 25.[2]

■ If the opponent of a summary judgment motion fails to submit a statement of facts controverting the movant's statement of facts pursuant to the local rule, then "all

---

**2.** It should be noted that plaintiff did file a Local Rule 25 "Statement of Facts Precluding Summary Judgment to Defendants" on February 28, 1992. However, this statement of undisputed facts refers only to the facts related to defendants' cross-motion for summary judgment, and contains no statements of facts regarding American General's motion for summary judgment.

of the facts set forth in the ... statement of the party moving for summary judgment must be deemed admitted." *Schneider v. OG & C Corp.*, 684 F.Supp. 1269, 1270 (S.D.N.Y.1988), citing *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984) (per curiam); *see also Zahorik v. Cornell Univ.*, 729 F.2d 85, 91 (2d Cir.1984); *Alfin, Inc. v. Pacific Ins. Co.*, 735 F.Supp. 115, 116 (S.D.N.Y.1990). Therefore, based upon the failure of plaintiff to make any submission pursuant to Local Rule 25, this Court deems as admitted those facts contained in the January 30, 1992 "Statement of Facts Not at Issue" submitted by defendants.

### 1. The Seller–Purchaser Argument

■ This Court will consider American General's second argument first. It is well-settled that "[w]hen a corporation sells substantially all its assets to another, the purchasing corporation is only liable for the former's liabilities under certain circumstances." *Long v. AT & T Information Systems*, 733 F.Supp. 188, 208 (S.D.N.Y.1990). One such circumstance is an express or implied agreement that the successor will assume liabilities. In the instant case, no evidence has been proffered regarding the existence of such an agreement.

■ A second circumstance assigns liability to the purchaser corporation, under the doctrine of successorship liability. In order for the seller corporation to escape liability under this doctrine, it must show 1) that the successor had prior notice of the claim against the seller, 2) the ability of the seller to have paid the claim, and 3) a continuity of business operations to include management personnel, employees, location, nature of service, and methods of production. *Long*, 733 F.Supp. at 208. In the instant case, American General has provided statements concerning only the first two items, but has failed to provide any statements concerning the continuity of business operation between itself and Zurich.

Based upon the foregoing considerations, this Court finds that American General is not entitled to summary judgment under its argument of seller-purchaser, as a matter of fact and as a matter of law.

### 2. The Parent–Subsidiary Argument

■ It is well-settled that for purposes of corporate liability, "there is a 'presumption of separateness' afforded to related corporations." *Fidenas AG v. Honeywell, Inc.*, 501 F.Supp. 1029, 1036 (S.D.N.Y.1980), quoting *Williams v. McAllister Brothers Inc.*, 534 F.2d 19, 22 (2d Cir.1976). "Thus, when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company is the employer." *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987). "In order to overcome the presumption of separateness, what must be shown is that the parent is the 'alter ego' of the subsidiary and that the subsidiary is the 'mere instrumentality' of the parent." *Fidenas AG*, 501 F.Supp. at 1036. However, under this theory, the plaintiff must demonstrate the parent's complete dominion and obtrusive interference similar to that in a principal-agent relationship. *Carte Blanche v. Diners Club Intern.*, 758 F.Supp. 908, 918 (S.D.N.Y.1991) (applying New York law).

In *Brunfield v. Ridge Tool Co., Inc.*, 546 F.Supp. 553 (S.D.N.Y.1982), the plaintiff sued a parent and its subsidiary for personal injuries alleging that the two defendants produced, manufactured and designed the machine which injured plaintiff. The defendant parent was awarded summary judgment since it produced affidavits from senior vice-presidents of each corporate defendant testifying that the subsidiary was the parent's "wholly-owned subsidiary ... a corporation separate and distinct," with different addresses, physical locations, financial records, and bank accounts, "purchas[ing] its own goods and services ... hir[ing] its own employees ... making its own decisions" regarding the products it produces and its daily business decisions, "without the domination or control" of the parent. 546 F.Supp. at 554.

In response, plaintiff offered a meek affidavit of denial, but notably failed to submit his statement of material facts as to which

he contended there was a genuine issue to be tried, pursuant to the local rule. *Id.,* at 555. The court therefore, deemed the facts submitted by the parent-movant as admitted, and awarded summary judgment to the parent, concluding that its supporting affidavits "point[s] to only one conclusion: [the parent] has no place in this case as a matter of fact and law." *Id.,* at 556.

In the instant case, plaintiff has failed to submit any affidavits rebutting the presumption of corporate separateness between American General and Maryland Casualty, and has similarly failed to submit a statement of facts pursuant to Local Rule 25. Based upon the foregoing considerations and case law, this Court holds that American General is not a proper party defendant in this case as a matter of fact and of law. Therefore, American General's motion for summary judgment is granted, and plaintiff's complaint against American General is dismissed in its entirety.

### C. *Defendants' Motion to Strike*

In pursuing their summary judgment motion, defendants move to strike several paragraphs and several portions of paragraphs of various affidavits submitted by plaintiff in opposition to defendants' summary judgment motion. Defendants argue that several of the statements in these paragraphs are not based on personal knowledge, and therefore are in contravention of Fed.R.Civ.P. 56(e).

Federal Rule of Civil Procedure 56(e) provides in pertinent part that:

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party ... must set forth specific facts showing that there is a genuine issue for trial.

 In applying the Rule, district courts in this Circuit have held that "[a]n affidavit made on secondhand information and hearsay is not made on the 'personal knowledge' of the affiant for purposes of Rule 56(e)." *Isaacs v. Mid America Body & Equipment Co.,* 720 F.Supp. 255, 256 (E.D.N.Y.1989). Further, regarding the Rule's requirement that the adverse party set forth facts that demonstrate there is a genuine issue for trial, "[a] genuine issue of fact requiring a trial cannot be raised by statements in affidavits not based on personal knowledge, ... or arguments or statements by counsel unsupported by the record." *Estate of Detwiler v. Offenbecher,* 728 F.Supp. 103, 135 (S.D.N.Y.1989) (citations omitted). Consequently, the proper test under the Rule "is whether the affiant's statements 'would be admissible in evidence under any rule of evidence or exception thereto, if the affiant was on the stand testifying' in court." *Isaacs,* 720 F.Supp. at 256, quoting 6 J. Moore, Federal Practice, 56–752 to –755 (2d ed. 1988).

In addition, this Court notes that in his Decision and Order of December 6, 1991, the Magistrate Judge restricted plaintiff's subsequent discovery to the Mid–Atlantic Region of Maryland Casualty. Further, the Magistrate Judge specifically held that plaintiff may not be allowed to rely on subjective "testimony from other terminated employees in order to prove a pattern and practice of age discrimination," without first furnishing a bases for their evaluations, in accordance with *Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir.1984). (Decision and Order, p. 5).

 In considering defendant's motion, this Court initially notes that several of the disputed paragraphs add no material information, but are mere reaffirmations of material already in the record. This Court considers these paragraphs as a "road map" with respect to the documentary evidence attached to the respective affidavit or to the record in general, and therefore finds no personal knowledge deficiency. *See, Maier–Schule GMC v. General Motors Corp.,* 780 F.Supp. 984, 988 (W.D.N.Y. 1991).

[This Court then considered thirty-one specific evidentiary objections to paragraphs contained in affidavits submitted by plaintiff.]

### D. Defendants' Summary Judgement Motion

#### 1. Plaintiff's Age Discrimination Claims

Plaintiff has asserted age discrimination claims under both the ADEA and New York's Human Rights Law. In addition, plaintiff seeks double damages for defendants' alleged willful violation of the ADEA. Defendants move for summary judgment against plaintiff's age discrimination claims.

 The proper analysis of the burdens of production and the order of proof for a disparate treatment employment discrimination case based on age, are the same as those established by the United States Supreme Court in a claim under Title VII of the Civil Rights Act of 1964. *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *Taggert,* 924 F.2d at 46 (2d Cir.1991).

 First the plaintiff must establish a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the plaintiff successfully establishes his prima facie case, the burden then shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the employee's rejection, discharge or other discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *McDonnell Douglas,* 411 U.S. at 802; 93 S.Ct. at 1824. Finally, if the defendants successfully carry this burden, the plaintiff must demonstrate by a preponderance of the evidence that the defendants' "proffered reason was not the true reason for the employment decision," but was instead a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see also McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. If the plaintiff fails to make this showing, then this Court must grant defendants' motion for summary judgment.

 The Second Circuit has required that in order to make out a prima facie case under the burden shifting analysis of *McDonnell Douglas* and *Burdine,* that a plaintiff must show that he 1) belongs to the protected age group, 2) was qualified for the position, 3) was discharged or otherwise discriminated against, 4) in circumstances giving rise to an inference of discrimination. *Taggert v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir. 1991); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464 (2d Cir.1989). This inference of discrimination "may be shown by direct evidence, statistical evidence, or circumstantial evidence such as documentation of preference for younger employees." *Taggert,* 924 F.2d at 46.

 Concerning plaintiff's claim pursuant to the New York Human Rights Law (New York Executive Law § 296), this Court notes that New York courts have utilized federal case law's interpretation and application of federal discrimination statutes in determining the elements of a prima facie case and the burdens of production and order of proof. *Mastrangelo v. Kidder, Peabody & Co., Inc.,* 722 F.Supp. 1126 (S.D.N.Y.1989). For example, the New York Court of Appeals has cited *McDonnell Douglas* as providing the applicable standards for the evaluation of an action under New York Executive Law § 296. *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 778, 489 N.E.2d 745, 746 (1985). Consequently, plaintiff's age discrimination claim pursuant to Executive Law § 296 is dependent upon the outcome of his claim under the ADEA.

Finally, this Court notes the admonition of the Second Circuit that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985); *Ramseur,* 865 F.2d at 465. Disparate treatment claims in the workplace fall into this category of cases since they revolve around questions of an employer's intent in making employment decisions. Establishing inferences of discrimination in employment cases is difficult since, " '[e]mployers are rarely so cooperative as to include a notation in the person-

nel file' that the firing is for a reason expressly forbidden by law." *Ramseur,* 865 F.2d at 464–65, quoting *Thornbrough v. Columbus & Greenville Railroad Co.,* 760 F.2d 633, 638 (5th Cir.1985). Therefore, "disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990).

The effect of these considerations on a summary judgment motion in a disparate treatment employment case suggests the apparent contradictory conclusions that "questions of discriminatory intent are often impossible to resolve in advance of trial," *Warren v. Quality Care Service Corp.,* 603 F.Supp. 1174, 1181 (W.D.N.Y. 1985), but nonetheless "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri,* 759 F.2d at 998.

Cognizant of the problems in demonstrating discrimination claims, and aware of the effect of this problem on the consideration of summary motions, this Court now proceeds to evaluate the factual basis plaintiff has provided for his age discrimination claims, under the criteria for discriminatory analysis delineated above.

■ Plaintiff is a member of the protected class, pursuant to 29 U.S.C. 631(a), since he was 59 to 60 years of age when the alleged discriminatory events took place. Plaintiff was qualified for the branch manager position that he held prior to the termination of his employment, since he served in that position for approximately eleven years prior to the cessation of his employment. Defendants contend that since plaintiff was totally disabled, he was consequently not qualified for his job. However, this argument is unavailing, since plaintiff's disability did not affect his being "qualified" for the job, as that term is interpreted under the ADEA, it only affected his present ability to perform the job. Further, since plaintiff's disability

may be a direct consequence of his allegations regarding defendants' conduct and his constructive discharge, it would be illogical and contrary to the ADEA's purpose to allow an employer's alleged illegal activity to hinder an employee from demonstrating age discrimination. Therefore, this Court holds that plaintiff has met the first two steps of presenting a prima facie case of age discrimination.

Next, plaintiff must demonstrate either that he was discharged or "otherwise discriminated" against. Defendants contend that plaintiff cannot meet this burden since he was neither actually nor constructively discharged and therefore never terminated. However, defendants' contention ignores the reality that an employee may seek redress under the statute for other illegal acts in addition to an improper discharge, and consequently may demonstrate a prima facie case by showing the occurrence of such other illegality.

■ For example, a plaintiff may suffer age discrimination in a decision not to hire, or he may be "otherwise discriminated against ... with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. 623(a)(1). *See, e.g., Taggert,* 924 F.2d at 44–46 (plaintiff denied rehiring by former employer, as "overqualified" for over thirty available positions). Plaintiff herein asserts that his employers otherwise discriminated against him in the conditions and privileges of his employment, by consistently intimidating and harassing him in several incidents, meetings, and reviews. Therefore, plaintiff need not necessarily show that he was discharged, either constructively or actually, in order to demonstrate the third requirement of a prima facie case of age discrimination, but need only demonstrate that the conditions and privileges of his employment were adversely affected in contravention of the statute. Consequently, the requisite showing as to the third element of plaintiff's prima facie case has been demonstrated sufficiently.

■ In addition, plaintiff has alleged that defendants were motivated to force his resignation and/or early retirement from

their employment and that "[d]efendants abused me and terminated me because of my age." This Court interprets plaintiff's contentions as clearly alleging a case of constructive discharge. If a court finds a constructive discharge to have occurred, "an employee's resignation is treated—for the purpose of establishing a prima facie case of employment discrimination—as if the employer had actually discharged the employee." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987). Therefore, in evaluating plaintiff's prima facie case, this Court must determine if plaintiff was constructively discharged. In this regard, the Second Circuit has directed that:

> [a] constructive discharge occurs when the employer, rather than acting directly, "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." ... In determining whether or not a constructive discharge has taken place, "the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

*Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983).

■ Recognizing that "the burden of establishing a prima facie case of disparate treatment is not onerous," *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1054, this Court finds that plaintiff has met the third leg of his prima facie case by sufficiently showing both adverse conditions and his constructive discharge. Plaintiff has described sufficient incidents to demonstrate adverse conditions in the workplace. Similarly, this Court finds that the record demonstrates a constructive discharge, since a reasonable person in plaintiff's shoes would have felt compelled to resign. In making this determination, this Court notes that a reasonable person in plaintiff's shoes also would reasonably conclude, as plaintiff did, that the workplace incidents were a proximate cause of his medical condition and anxiety. This is demonstrated by the proximity in time between interactions with Loden and Fitzsimmons, plaintiff's subsequent physical discomfort, and negative medical reports from plaintiff's physicians.

Defendants' response that since Maryland Casualty asked plaintiff to return to work after it had replaced Fitzsimmons and Loden, plaintiff was not discharged is unavailing. What defendants did after plaintiff's cessation of work, cannot negate the plaintiff's, or a reasonable person's, perception of what occurred before.

Defendants further argue that since plaintiff was totally disabled he did not resign, and since plaintiff did not resign, then under *Lopez*, 831 F.2d at 1188, plaintiff was not constructively discharged. However, defendants' argument lacks merit since *Lopez* does not present the standard that a constructive discharge is demonstrated only by an affirmative resignation. *See* 831 F.2d at 1188–89. Conceivably, a constructive discharge could occur through medical or physical inability. Furthermore, plaintiff's application for pension benefits in his May 9, 1992 letter to Maryland Casualty could be interpreted as the formal act of resignation that defendants' argument demands. In fact, defendants have argued that plaintiff's application for retirement benefits stopped his entitlement to disability benefits, and also that plaintiff was not covered under LTD Plan 2, because he was not an employee of Maryland Casualty on the effective date of LTD Plan 2. Therefore, this Court concludes that for purposes of demonstrating his prima facie case, plaintiff has sufficiently shown that he was constructively discharged.

Plaintiff must next demonstrate that discrimination in the conditions in his employment and/or the constructive discharge occurred under circumstances giving rise to an inference of discrimination. This may be accomplished by either direct, statistical, or circumstantial evidence. *Taggert*, 924 F.2d at 46.

■ As proof of direct evidence, plaintiff has reported that Loden told him "that because of my age, he knew it would be difficult for me to conform to his wishes," in order to remain with the company; and "accused me of being 'over the hill;'" and

"despite my age and circumstances, I would be terminated, if *in his opinion,* the Buffalo office did not improve." (emphasis in original). This Court finds these comments to be merely "stray" remarks, "insufficient to establish discrimination," and insufficient to trigger a burden shift or to avoid summary judgment for a defendant in a disparate treatment case. *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990) (citations omitted); *see also Melnyk v. Adria Lab.,* 799 F.Supp. 301 (W.D.N.Y.1992). "[I]solated and ambiguous statements ... 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989).

Even though the comments were made by Loden, a person potentially involved in the employment decisional processes affecting plaintiff, the quoted remarks are ambiguous and there is no evidence to suggest that Loden uttered them in the context of any employment decision. In such an instance, stray remarks "are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue." *Merrick,* 892 F.2d at 1438, citing *Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989). Therefore, this Court finds that plaintiff has failed to demonstrate an inference of discrimination by direct evidence.

■ Plaintiff has also attempted to demonstrate an inference of discrimination by statistical evidence. However, this Court has earlier found that plaintiff's statistical evidence was stricken from the record, pursuant to Fed.R.Evid.P. 602, and to the Magistrate Judge's holding in his December 6, 1991 Decision and Order that plaintiff may not be allowed to discover or to rely on materials outside of Maryland Casualty's Mid–Atlantic Region. This Court notes that even had plaintiff's statistical evidence been admissible, it appears to lack probative value because of deficiencies in the statistical sample. For example, the sample is small in number; all of the sample's members have been employees of Ma-

ryland Casualty for several years and members of the protected class for several years; not all of the sample members are branch managers; and plaintiff presents no comparative data concerning branch managers not in the protected age group. Therefore, as the Second Circuit found in *Haskell,* statistical evidence based on a small and otherwise deficient sample cannot permit an inference that age was a determinative factor in an employer's behavior, either in proving a pattern and practice of age discrimination, or in proving age discrimination toward a single plaintiff. 743 F.2d at 121–22. Therefore, plaintiff has failed to demonstrate an inference of discrimination by means of statistical evidence.

Plaintiff has also attempted to demonstrate an inference of discrimination by circumstantial evidence. However, this Court has earlier noted the restrictions imposed by the Magistrate Judge, prohibiting discovery from regions outside of the Mid–Atlantic Region, and prohibiting testimony that includes subjective, unsubstantiated renditions from fellow employees concerning their work performance and conclusions of discrimination. Therefore, this Court will not rely on the affidavits of John Phillips, Thomas Lincks, James Hasdell, or Paul Branch as proof of a discriminatory intent by defendants in their dealings with plaintiff. In addition, the employee personnel records that plaintiff presents as circumstantial proof are from branches outside of the Mid–Atlantic Region, and are therefore beyond the limits imposed by the Magistrate.

However, again recognizing that "the burden of establishing a prima facie case of disparate treatment is not onerous," *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094, this Court finds that plaintiff has demonstrated an inference of discrimination by circumstantial evidence, through the series of events described in his February 14, 1992 affidavit.

■ Therefore, this Court finds that plaintiff has demonstrated a prima facie case of age discrimination. In order to rebut plaintiff's prima facie case, defen-

dants must articulate a legitimate, nondiscriminatory reason for their constructive discharge and adverse behavior toward plaintiff. This is accomplished by proffering "admissible evidence that would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096.

Defendants provide affidavits from Loden and Fitzsimmons attesting that their behavior toward plaintiff was never motivated by an intent to discriminate based upon his age. Specifically, they further demonstrate that in 1987 and 1988, plaintiff's job performance was deficient and management intervention was needed to remedy this deficiency. Defendants also provide an affidavit from David A. Pieffer, a then 38 year-old Maryland Casualty branch manager. Mr. Pieffer states that Loden was abusive to him, and indicated he received stern warnings from Loden about his deficient performance and job security. Defendants provide an affidavit from Maryland Casualty's Senior Vice President of Branch Operations which attests that in January of 1991 he demoted Fitzsimmons and he "removed Loden from any supervisory responsibility over branch managers." This action was based on an internal company report which suggested that Fitzsimmons had "abdicated ... his managerial responsibility ... to Loden ... [who] ran the region in an extremely intimidating manner." Finally and significantly, defendants present an affidavit of Maryland Casualty's Assistant Vice President of Benefits, which includes personnel information concerning Maryland Casualty's branch managers who started their employment before January 1, 1984 or left their employment after 1988. This same affidavit contains evidence that all but two of the managers (David Pieffer and Michael Hrabosky) were in the protected class under the ADEA while managers at Maryland Casualty. Defendant further explains this data as demonstrating that the branch managers had an average age of 51 in January of 1984, and of 50.25 in November of 1988.

This Court finds that defendants have met their burden of production sufficient to rebut plaintiff's prima facie case. Plaintiff must now demonstrate that defendants proffered reasons were not the true reasons for the adverse treatment he allegedly received and for his constructive discharge. Plaintiff "may succeed in this either by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

As indirect evidence that defendants' reasons are pretext for discrimination, plaintiff offers testimony from Fitzsimmons that the Buffalo branch was a financial success in the years immediately preceding and continuing into the harassment he received from Loden. Similarly, plaintiff presents documentation indicating that he and the Buffalo branch were company award winners in 1986, one year before the allegations of disparate treatment began. Finally, plaintiff recites the economic successes of the Buffalo branch during his term as manager. Plaintiff concludes therefore, that poor job performance could not be the real reason for his discharge.

However, the record presented by plaintiff also contains numerous memoranda from plaintiff's supervisors that recite both economic deficiencies and job performance deficiencies regarding plaintiff's performance in particular and the Buffalo office in general. It is well settled that an opponent of a summary judgment motion may not rely on "mere conclusory allegations or denials" as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Instead, the opponent of the motion "must bring to the district court's attention some affirmative indication that his version of the relevant events is not fanciful." *Id.* Therefore, plaintiff's contention that it was implausible that his employer's behavior toward him was motivated by poor performance is not supported by the record. Economic criteria and management skills are separate performance categories, and Maryland Casualty could have had concerns about

one and not the other, still indicating a concern for overall job performance. Further, in any event the record does in fact indicate management's concern over economics, contrary to plaintiff's conclusion about the branch's economic success. Consequently, this Court is hard pressed not to conclude that plaintiff's contentions only represent his interpretation of the relevant facts. As such, this line of indirect evidence is insufficient to meet his burden of establishing pretext for discriminatory treatment.

Plaintiff also argues that defendants' intent to accelerate plaintiff's deteriorating medical condition is reason in itself to show that defendants did not possess "any legitimate or non-discriminatory motive" in their actions toward plaintiff. However, this argument is insufficient to rebut defendants' contentions that Loden was equally abusive to all his underlings, even the one who was not in the protected age group. Loden's intimidating behavior to all his subordinates may be evidence of an impersonable, overly aggressive, and even unsavory manager, but without more it does not demonstrate that his actions were motivated by age.

■ Finally, plaintiff argues that all or most "older" managers were treated adversely due to their age, and since he is in this group this is what happened to him. However, as this Court and the Magistrate Judge have found, the probative value of subjective evidence from fellow employees regarding their employment experiences, introduced as proof of what happened to a particular plaintiff is substantially outweighed by the danger of unfair prejudice of such testimony. Consequently, such evidence is inadmissible, absent a basis shown for the employees' self-evaluations. *Haskell*, 743 F.2d at 121–22. This Court notes that the "basis shown" requirement includes objective criteria for the subject position measured against the employee's qualifications and background in the field, as well as proof of the employer's actual evaluation of the employee. See, e.g., *Haskell*, 743 F.2d at 121; *Sweeney v. Research Foundation*, 711 F.2d 1179, 1185 (2d Cir.

1983). Without a sufficient basis shown, such testimony merely presents "unnecessary collateral issues," and provides "no basis for an inference of discrimination." *Haskell*, 743 F.2d at 121, quoting *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1392, n. 8 (11th Cir.1983).

Therefore, the evidence that plaintiff offers to establish pretext indirectly, is insufficient to meet his burden of proof. This Court must now consider whether plaintiff has satisfied this burden through direct evidence.

■ Plaintiff's direct evidence is limited to the statements discussed earlier, allegedly made by defendants and demonstrating their discriminatory intent based on plaintiff's age, and to a statement made by Loden that he intended to cause plaintiff's stress and other medical ailments. However, as this Court has previously found, these comments represent ambiguous, stray remarks uttered in the workplace. As such they are insufficient to create a material issue of fact to defeat a summary judgment motion. *Gagne*, 881 F.2d at 314.

Plaintiff is hampered in offering direct evidence of disparate treatment, showing that similarly situated employees received preferential treatment based upon their age. It appears from the record that nearly all of the branch managers in the time in question were in the protected class. Further, one of the managers who was under 40 years of age, and therefore not in the protected class, attested to treatment from Loden similar to that complained of by plaintiff. Therefore, as defendants correctly note, plaintiff has failed to provide direct statistical evidence of disparate treatment, and in fact the direct evidence that exists in this regard demonstrates that defendants provided no disparate treatment based upon age.

Consequently, all of the evidence that plaintiff relies on to establish pretext directly is insufficient to meet his burden of proof.

Based upon the foregoing considerations, plaintiff has failed to meet his burden of establishing by a preponderance of the evidence that defendants' reasons for their

actions toward plaintiff were a mere pretext for age discrimination. Therefore, this Court grants defendants' motion for summary judgment on plaintiff's age discrimination claims under the ADEA and New York's Executive Law.

### 2. Hostile Work Environment Theory

Although plaintiff's Amended Complaint and the affidavits and memoranda submitted in support of and in opposition to defendants' summary judgment motion frame plaintiff's age discrimination claim under the traditional elements and evaluative criteria discussed above, this Court recognizes that the gravamen of plaintiff's claim may also constitute a hostile work environment theory. A hostile work environment theory has been recognized as a valid theory of recovery for sex discrimination under 42 U.S.C. § 2000e *et seq.*, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59 (2d Cir.1992), *Trotta v. Mobil Oil Corp.*, 788 F.Supp. 1336 (S.D.N.Y.1992); and for discrimination based upon race under 42 U.S.C. § 1981. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184 (2d Cir.1987).

As noted earlier, the proper analysis of the burdens of production and the order of proof for a disparate treatment employment discrimination case based on age, are the same as those established by the United States Supreme Court in a claim under Title VII of the Civil Rights Act of 1964. *Binder*, 933 F.2d at 191; *Taggert*, 924 F.2d at 46. Therefore, a cause of action for age discrimination based on a hostile work environment theory may apply the same analysis of a cause of action for sex or race discrimination asserted under such a theory. This analysis includes proving a prima facie case of hostile work environment, and surviving the burden shifting analysis of *Burdine* and *McDonnell Douglas*. *Kotcher*, 957 F.2d at 62–63; *Lopez*, 831 F.2d at 1188.

██ A hostile work environment theory requires that the plaintiff show that 1) he was a member of a protected class, 2) he was subject to unwelcome harassment, 3) the harassment was prompted solely because of his age, 4) the harassment affected a term, condition or privilege of his employment, and 5) the existence of respondeat superior liability. *Kotcher*, 957 F.2d at 62–63; *Trotta*, 788 F.Supp. at 1348.

██ In the instant case, plaintiff is within the protected class. Viewing the workplace incidents alleged in a light most favorable to plaintiff, he was subjected to unwelcome harassment. As this Court previously found, plaintiff has demonstrated an inference of discrimination by circumstantial evidence, through the series of events described in his February 14, 1992 affidavit. As this Court also previously found, plaintiff demonstrated sufficient incidents to demonstrate that the terms and conditions of his employment were affected. However, this Court notes that under a hostile work environment analysis, courts have required a stronger showing of offensive employer conduct. For example, the conduct must be "pervasive," or "continuous and concerted," or "occur[ing] either in concert or with a regularity that that can be reasonably termed pervasive," considering such factors as the offensiveness of the complained against behavior. *Trotta*, 788 F.Supp. at 1349–50. (citations omitted). Therefore, plaintiff bears a stronger burden here, but noting that the burden of proving a prima facie case of discrimination is not onerous, this Court finds that plaintiff has sufficiently demonstrated adverse conditions in his work environment to meet this part of the hostile work environment theory.

However, plaintiff has difficulties in demonstrating the last requirement of a valid hostile work environment action, respondeat superior liability. The Second Circuit has required that in order to show that the employer is responsible for the hostile environment, the "plaintiff must prove that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher*, 957 F.2d at 63.

In the instant case, plaintiff has alleged that he told Loden of his failing health and

work-related stress, but that Loden responded "good, that's what I intended." In addition, Fitzsimmons was carboned or otherwise aware of the memoranda that Loden sent to Spence, and was present at some of the alleged incidents.

However, there is only one indication in the record that plaintiff complained to any higher superior. In his deposition, plaintiff testified that he "reported verbally to the claims manager in Buffalo," and "made a written report" about his perceived relationship between his work and stress. Plaintiff further testified that the claims manager told him that the information was forwarded to Maryland Casualty. However, there is no copy of the report, nor any further testimony about plaintiff's following up on his complaint. Further, there is no indication in the record that plaintiff was foreclosed from any avenues of complaint by Loden, Fitzsimmons, Maryland Casualty in general, or anyone at Maryland Casualty in particular. See, *Kotcher,* 957 F.2d at 63. (plaintiff made use of company procedure for reporting discrimination).

In addition, Maryland Casualty subsequently removed Loden from his position of supervision of branch managers, and demoted Fitzsimmons, based on an employee complaint and an internal report. The fact that this action was taken in January of 1989, after plaintiff left Maryland Casualty and commenced this suit is unavailing. This is especially so since plaintiff did not apply for either total-disability benefits or retirement benefits until April or May of 1989. Therefore, prior to any formal act memorializing his leaving his job, plaintiff could have been considered a Maryland Casualty employee, have recovered from his disability, returned to work sometime between November of 1988 and January of 1989, and still have had Loden and Fitzsimmons as his immediate supervisors. Therefore, Maryland Casualty's actions regarding Loden and Fitzsimmons constitute "doing something" about employee complaints, not only toward the remaining branch managers, but also toward plaintiff. Therefore, plaintiff has not demonstrated that the behavior of Loden and Spence is sufficiently imputed to Maryland Casualty in order to demonstrate a hostile work environment.

### 3. Plaintiff's Wrongful Discharge and Intentional Tort Claims

Plaintiff has asserted causes of action for wrongful discharge and for intentional tort. Plaintiff has also asserted a cause of action for punitive damages based on defendants' alleged intentional tort. Defendant has moved for summary judgment seeking dismissal of plaintiff's claims.

The New York Court of Appeals has expressly provided that "[t]his court has not and does not now recognize a cause of action for abusive or wrongful discharge of an employee; such recognition must await action of the Legislature." *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 297, 461 N.Y.S.2d 232, 233, 448 N.E.2d 86, 87 (1983). This holding was predicated on the Court's conclusion that "there is no implied obligation of good faith and fair dealing in an employment at will, as that would be incongruous to the legally recognized jural relationship in that kind of employment relationship." *Ingle v. Glamore Motor Sales, Inc.,* 73 N.Y.2d 183, 188, 538 N.Y.S.2d 771, 773, 535 N.E.2d 1311, 1313 (1989), citing *Murphy,* 58 N.Y.2d at 304–05, 461 N.Y.S.2d at 237, 448 N.E.2d at 91.

In holding that there is no cause of action in tort for the abusive or wrongful discharge of an at-will employee, the New York Court of Appeals also held that an employee may not attempt to recast such a claim against his employer as one for intentional infliction of emotional distress or prima facie tort. *Murphy,* 58 N.Y.2d at 303–04, 461 N.Y.S.2d at 236–37, 448 N.E.2d at 90–91; *Ingle,* 73 N.Y.2d at 188–89, 538 N.Y.S.2d at 773–74, 535 N.E.2d at 1313–14. Finally, the Court also refused to adopt by law, an implied covenant of good faith discharge in at will employment. *Murphy,* 58 N.Y.2d at 304, 461 N.Y.S.2d at 237, 448 N.E.2d at 91; *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 335, 514 N.Y.S.2d 209, 212, 506 N.E.2d 919, 922 (1987).

In applying New York law, federal courts have recognized and enforced the

limitations expressed in *Murphy*. See, e.g., *Piesco v. City of New York Dep't of Personnel*, 753 F.Supp. 468, 478–79 (S.D.N.Y.1990); *Winters v. General Motors Corp.*, 715 F.Supp. 54, 58 (W.D.N.Y. 1989).

The instant plaintiff is clearly an at will employee and has plead a constructive discharge at the hands of his employers. Plaintiff has neither plead nor made any reference to an express contractual right limiting defendants' otherwise unfettered right to discharge plaintiff either actually or constructively. Accordingly, this Court need not undertake an implied covenant of good faith analysis. *See Sabetay*, 69 N.Y.2d at 334–35, 514 N.Y.S.2d at 212, 506 N.E.2d at 922; *Sabatowski v. Fisher Price Toys*, 763 F.Supp. 705 (W.D.N.Y.1991). Therefore, the limitations of *Murphy* apply directly, and plaintiff may not recover against his employers under theories of wrongful discharge, intentional tort, prima facie tort, intentional infliction of emotional distress, or any other "substitute nomenclature or causes." *Ingle*, 73 N.Y.2d at 188, 538 N.Y.S.2d at 774, 535 N.E.2d at 1313.

Based upon the foregoing it is clear that plaintiff's actions for wrongful discharge and intentional tort cannot stand, for plaintiff may not recover under causes of action that are not recognized under the law of New York.

■■■ Furthermore, as the District Court in the Southern District of New York held in *Piesco*, this Court further finds that even assuming that plaintiff's actions for prima facie tort and intentional infliction of emotional distress were not foreclosed by *Murphy*, the elements of these claims are lacking. 753 F.Supp. at 479. Prima facie tort requires an intentional infliction of harm, resulting in special damages, without excuse or justification, by acts which would otherwise be lawful. *O'Keefe v. Niagara Mohawk Power Corp.*, 714 F.Supp. 622, 633 (N.D.N.Y.1989), citing *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142–43, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 355 (1985). Further, if the malicious motive is tainted by anything (including profit, self-interest, or business advantage) other than an intent to harm the plaintiff, the action does not lie. *Id.*

■■■ In the instant case, defendants have offered plaintiff's poor performance as their justification for Loden's and Fitzsimmon's behavior toward plaintiff. Additionally, plaintiff himself has speculated that Loden's behavior was motivated by an intent to increase his profits and standing in the company. Therefore, this Court finds that plaintiff is unable to demonstrate a prima facie case for prima facie tort.

■■■ Similarly, a cause of action for intentional infliction of emotional distress "predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer*, 65 N.Y.2d at 143, 490 N.Y.S.2d at 741, 480 N.E.2d at 355; *see also* Restatement of Torts, Second § 46, comment d. In viewing the facts as alleged by plaintiff, this Court finds no significant indication that defendants' conduct as to plaintiff has reached the level of extreme and outrageous conduct required under New York law to state a prima facie case of intentional infliction of emotional distress. Although this Court recognizes that Loden was removed from his supervisory responsibility over branch managers, for reasons including his intimidating manner of management in his region and possibly "other managerial problems in the Mid-Atlantic Region," it cannot conclude that this action was taken because of Loden's treatment of plaintiff, and most importantly it cannot conclude that Loden's treatment of plaintiff was extreme and outrageous.

Therefore, defendants motion for summary judgment against plaintiff's causes of action for wrongful discharge and intentional tort are granted.

E. *Plaintiff's Partial Summary Judgment Motion*

Plaintiff has moved for partial summary judgment seeking relief for past and future

long-term disability benefits under a Long Term Disability Plan provided to employees of Maryland Casualty by American General Group Insurance Company.

Based upon this Court's findings herein granting summary judgment to defendants against all causes of action asserted in plaintiff's second Amended Complaint, this Court denies plaintiff's motion for partial summary judgment for past and future long-term disability benefits. In so doing, this Court makes no findings concerning the interpretation or applicability of the long-term disability plans in question.

It bears mentioning, however, to note that defendants contend that plaintiff's partial summary judgment motion should be denied, since the relief requested by plaintiff is properly pursued under an Employee Retirement Income Security Act ("ERISA") claim which plaintiff has failed to plead. Plaintiff replies that his Amended Complaint "properly seeks damages for Defendants' denial of his disability benefits," by reasserting the conclusory paragraphs in his Amended Complaint, as referred to above, and by concluding that "[p]laintiff has clearly claimed that Defendants unlawfully damaged Plaintiff in loss of disability benefits." Plaintiff also asserts that defendants failed to answer his interrogatories regarding long-term disability benefits, and then concludes "[i]t may therefore not be denied that Plaintiff has claimed damages against Defendants herein for loss of disability benefits and that Defendants have been placed on full notice that Plaintiff claims Defendants improperly denied his claim for long-term disability benefits."

■ Initially, this Court notes the well-settled rule of law that the damages sought dictate the legal cause of action under which such damages are properly recompensable. It is insufficient to merely recite a series of facts and to conclude that the plaintiff is entitled to recover certain damages, without reference to the appropriate theory of liability and how the requested damages flow from that theory. Different theories may include different duties of care, burdens of proof, defendants, and damages.

Consequently, this rule of pleading is important in a district court's consideration of a summary judgment motion, since the court's evaluation of the "materiality" of the facts in issue "is determined by the applicable substantive law." *Corcoran v. GAB Business Services, Inc.*, 723 F.Supp. 966, 968 (S.D.N.Y.1989), citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Therefore, a litany of facts may be material to summary judgment under one theory of substantive law, but inapplicable and immaterial to another. Consequently, in order to recover recompensable damages under the proper theory, that theory must be properly plead in the complaint.

In the instant case, plaintiff simply does not properly plead under ERISA. This Court, therefore, need not address defendants' contention any further.

### F. *Defendants' Motion for Sanctions*

■ Defendants contend that sanctions should be imposed upon plaintiff and plaintiff's counsel, pursuant to Fed.R.Civ.P. 11, for several reasons. These include not informing the Court of the existence of the 1987 long-term disability policy (LTD Plan 1) sent to plaintiff's counsel on November 1, 1991; moving for partial summary judgment on a cause of action not plead in the complaint; moving against defendants who have no liability under the Plan; and failing to withdraw the partial summary judgment motion after defendants' counsel informed plaintiff's counsel of these alleged deficiencies. Plaintiff indirectly responds to these allegations by proposing interpretations of the respective long-term disability Plans, and claiming that a cause of action for disability benefits was adequately plead in his complaint.

This Court denies defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11. Viewing the entire record, this Court cannot conclude that plaintiff's claim and partial summary judgment motion were filed in bad faith or with improper motives.

## CONCLUSIONS

For the reasons set forth above, this Court denies plaintiff's motion to strike defendants' respective Answers; grants defendant American General Corporation's motion for summary judgment; grants in part and denies in part defendants' motion to strike several paragraphs of several affidavits submitted by plaintiff; grants defendants' motion for summary judgment on plaintiff's age discrimination claims under the ADEA and New York's Human Rights Law; grants defendants' motion for summary judgment on plaintiff's intentional tort and wrongful discharge claims; denies plaintiff's motion for partial summary judgment for long-term disability benefits; and denies defendants' motion for sanctions.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to strike defendants' respective Answers, pursuant to Fed.R.Civ.P. 37(b)(2)(C), is DENIED.

FURTHER, that defendant American General Corporation's motion for summary judgment on plaintiff's second Amended Complaint is GRANTED.

FURTHER, that defendants' motion to strike several paragraphs of several affidavits submitted by plaintiff in opposition to defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

FURTHER, that defendants' motion for summary judgment on plaintiff's age discrimination claims under the ADEA and § 296 of the New York Executive Law is GRANTED.

FURTHER, that defendants' motion for summary judgment on plaintiff's claims for intentional tort and wrongful discharge is GRANTED.

FURTHER, that plaintiff's motion for partial summary judgment for long-term disability benefits is DENIED.

FURTHER, that defendants' motions for sanctions, pursuant to Fed.R.Civ.P. 11, against plaintiff and plaintiff's counsel is DENIED.

FINALLY, that the Clerk of the Court is directed to enter final judgment in favor of the defendants and against the plaintiff in accordance with this Decision and Order.

SO ORDERED.