Sandra M. BROWN, Plaintiff,

v.

**BRONX CROSS COUNTY MEDICAL GROUP, Laura Gazlay, Defendants.**

**No. 91 Civ. 8260 (DNE).**

United States District Court, S.D. New York.

Oct. 14, 1993.

---

Colin A. Moore, Brooklyn, NY (Colin A. Moore, Arleen T. Ralph, of counsel) for plaintiff.

Stroock & Stroock & Lavan, New York City (Alan M. Klinger, Steven M. Weiner, of counsel), for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiff Sandra M. Brown brings this action against defendants Bronx Cross County Medical Group and Laura Gazlay for discriminatory employment practices that she alleges ultimately led to termination of her employment. Plaintiff asserts that defendants' employment practices violated 42 U.S.C. §§ 1981, 1983, and 2000e, as well as New York state law.

Defendants move pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss plaintiff's § 1981 and § 1983 claims, and to strike from the complaint plaintiff's demands for compensatory and punitive damages and for a jury trial under § 2000e. In addition, Defendants argue that the Court

should decline supplemental jurisdiction over plaintiff's state law claims, or in the alternative, should dismiss the state law claims.

## BACKGROUND

In evaluating whether a complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, the court must assume the truth of plaintiff's well-pleaded factual allegations. *See Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). Accordingly, the following summary of facts is adopted from plaintiff's complaint.

Plaintiff Sandra M. Brown is a Jamaican national and a permanent resident of the United States. Plaintiff was employed by defendant Bronx Cross County Medical Group ("BCCMG"), a private professional corporation, as a medical records clerk from August 1985 until July 3, 1990. The events giving rise to the instant controversy began when defendant Laura Gazlay became Ms. Brown's supervisor at BCCMG. Ms. Brown avers that Ms. Gazlay refused to accommodate her domestic schedule even though Ms. Gazlay routinely accommodated other similarly situated non-Black employees' schedules. Furthermore, Plaintiff alleges that Ms. Gazlay repeatedly harassed her, belittling Ms. Brown's Jamaican heritage and subjecting her to taunts and insults on a number of occasions.

Moreover, Ms. Brown claims that, when one of her co-workers "abused [her] in front of clients and other co-workers," Ms. Gazlay refused to discipline the offending co-worker despite being asked to do so by her superior. On another occasion, Ms. Gazlay attempted to fire Ms. Brown for arriving late to work, but reinstated her when she later discovered that Ms. Brown had in fact arrived on time. When Ms. Brown submitted a written complaint concerning Ms. Gazlay's treatment of her to BCCMG's Regional Administrator, "defendant Gazlay's hostility towards plaintiff intensified and on July 3, 1990, plaintiff was terminated." *Complaint,* at 4.

Ms. Brown filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race and national origin. On September 27, 1991, the EEOC issued a finding that there was no probable cause for further action, and plaintiff filed this action on December 6, 1991.[1]

## DISCUSSION

Defendants move, pursuant to Rule 12(b)(6), to dismiss plaintiff's claims. In evaluating a Rule 12(b)(6) motion, the Court treats the facts alleged as true for the purposes of evaluating the legal merits of the complaint, and must determine whether the complaint or certain claims therein must be dismissed as devoid of merit under relevant substantive law even if the facts alleged are ultimately proven. *See Cortec Indus., Inc. v. Sum Holdings L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Each of plaintiff's claims will be evaluated with reference to this standard.

### I. *Plaintiff's Federal Statutory Claims*

#### A. *42 U.S.C. § 2000e*

Plaintiff filed her complaint on December 6, 1991. On November 21, 1991, Congress passed the Civil Rights Act of 1991 ("the Act"), which amends Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), to allow the plaintiff in an employment discrimination action to sue for compensatory and punitive damages and to have her case heard by a jury. *See* Pub.S. No. 102–166, § 102, 105 Stat. 1071 (1991). Prior to these amendments, jury trials and compensatory and punitive damages had

---

1. This matter was placed on the Court's suspense calendar pending the Court of Appeals for the Second Circuit's decision in *Butts v. City of New York Department of Housing Preservation and Development,* 990 F.2d 1397 (2d Cir.1993).

been held to be unavailable in cases brought under Title VII. *See, e.g., Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 953 (2d Cir.1988). Plaintiff concedes that all conduct and events involved in this action occurred prior to passage of the Act, but argues that the Act should be applied retroactively. Defendants argue against retroactive application, and move to strike plaintiff's demands for compensatory and punitive damages and for a jury trial.

In *Butts v. City of New York Department of Housing Preservation, and Development,* 990 F.2d 1397, 1411 (2d Cir.1993), the Court of Appeals for the Second Circuit held that the Act does not apply retroactively to cases involving conduct that occurred prior to passage of the Act. Thus, a cause of action brought under Title VII, as the statute applies to conduct occurring prior to enactment of the Act, is limited to a claim for reinstatement and back pay, and the Title VII plaintiff has no right to a jury trial. Therefore, defendants' motion to strike from the complaint plaintiff's demand for compensatory and punitive damages and for a jury trial under Title VII is granted.

### B. *42 U.S.C. § 1981*

Plaintiff cites the Civil Rights Act of 1870, 42 U.S.C. § 1981, as a further basis for her complaint. Section 1981 states, in relevant part, "all persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981 (1988). In recent years, the scope of § 1981 has been in flux. In *Patterson v. McLean Credit Union,* 491 U.S. 164, 177, 109 S.Ct. 2363, 2373, 105 L.Ed.2d 132 (1989), the Supreme Court limited the scope of § 1981, holding that the right to make contracts "does not extend ... to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." The Civil Rights Act of 1991 then superseded the *Patterson* decision and expanded the scope of § 1981 by providing that the term "make and enforce contracts" in § 1981 "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Facially, then, § 1981 as amended by the Civil Rights Act of 1991 might appear to provide an additional ground for plaintiff's complaint. However, as the Second Circuit concluded with reference to the plaintiff in *Butts,* "Since the 1991 Act does not apply to Plaintiff's case, we must apply the law as it existed prior to the Act." *Butts,* 990 F.2d at 1411. Thus, the Court is bound to apply § 1981 to Ms. Brown's case as the law existed at the time defendants' alleged conduct occurred. Because Ms. Brown concedes that this conduct occurred prior to passage of the Act, § 1981 must be applied as interpreted by the Supreme Court in *Patterson. See id.*

Under *Patterson,* neither discriminatory treatment of Ms. Brown during her employment at BCCMG nor racially-based termination would give rise to a § 1981 action. The *Patterson* Court clearly excluded racial harassment during employment from the scope of § 1981, stating "racial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson,* 491 U.S. at 171, 109 S.Ct. at 2369. Furthermore, the Second Circuit has clarified *Patterson,* explicitly excluding claims for discriminatory termination of employment from the scope of § 1981: "Discharge from employment involves neither the making nor the enforcement of a contract, but rather conduct subsequent to the formation of the contract. Accordingly, as this Court has previously concluded, an allegedly discriminatory termination of a contract is not actionable under section 1981." *Patterson v. Intercoast Management of Hartford, Inc.,* 918 F.2d 12, 14 (2d Cir.1990) (citing *Gonzalez v. The Home Ins. Co.,* 909 F.2d 716, 722 (2d Cir. 1990)), *cert. denied,* —— U.S. ——, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991).

In light of these decisions, § 1981 can have no bearing on this case and plaintiff's § 1981 cause of action is therefore dismissed.

## C. 42 U.S.C. § 1983

■ Plaintiff cites 42 U.S.C. § 1983 as providing an additional basis for her complaint. Section 1983 limits state sovereign immunity by enabling a private citizen to bring a claim against a state official, or an individual acting under color of state law, for violation of that private citizen's constitutional rights. A § 1983 plaintiff must prove two elements. First, plaintiff must demonstrate that he or she has been deprived of a right secured by the Constitution and the laws of the United States. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978). Second, plaintiff must prove that the defendant depriving plaintiff of such a right was acting under color of state law. *See id.* Plaintiff does not allege that either defendant acted under state authority or color of state law, and nothing in the complaint or in either party's brief indicates that defendant BCCMG is anything but a private corporation. Hence, § 1983 has no bearing on this case. Plaintiff's § 1983 cause of action is dismissed.

## II. *Plaintiff's State Law Tort Claims*

■ In addition to her federal claims, Ms. Brown brings three state law tort claims: abusive and malicious termination of employment, negligent hiring and retention of a "contentious" supervisor, and intentional infliction of emotional distress. Plaintiff invokes this Court's supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Defendants move to dismiss these claims pursuant to Rule 12(b)(1) for lack of jurisdiction.

■ A federal court has jurisdiction to hear a plaintiff's state claims together with his federal claims if "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The plaintiff's federal and state claims must derive from a common nucleus of operative fact. *Id.* This doctrine is codified at 28 U.S.C. § 1367, which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

■ As a threshold matter, the operative facts underlying plaintiff's Title VII claim are identical to those underlying plaintiff's state law claims. Moreover, both the federal and state claims are part of the same case or controversy. While the state law claims may require additional proof beyond that required by the federal claims, this alone is insufficient to prevent the exercise of supplemental jurisdiction. Therefore, the Court has the authority to assert supplemental jurisdiction over plaintiff's state law claims.

In light of the similar evidence required by both the federal and state claims, I find that the exercise of supplemental jurisdiction is appropriate. The various concerns raised by defendants in opposition to the Court's assertion of supplemental jurisdiction are outweighed by the advantages of trying these closely related claims together, and the hardship and expense that would be imposed on the plaintiff if she were compelled to bring a parallel state court action on the state law claims. Since federal courts have exclusive jurisdiction over Title VII claims, dismissing Ms. Brown's state law claims would result in duplicative litigation over the same conduct. Thus, "considerations of judicial economy, convenience and fairness to litigants," *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, make the exercise of supplemental jurisdiction over plaintiff's state law claims appropriate.

### A. *Negligent Hiring and Retention of an Employee*

■ Plaintiff's first state law claim is for negligent hiring and retention of an employee, or more specifically, a "contentious" supervisor. In her brief, plaintiff cites no authority in support of this claim, and New York courts have not recognized claims for negligent hiring of an employee whose subsequent offense involved racial harassment. The New York courts do recognize the tort

of negligence in hiring and retention of an employee known to be dangerous to the health and safety of coemployees. *See Detone v. Bullit Courier Serv., Inc.*, 140 A.D.2d 278, 528 N.Y.S.2d 575, 576 (App.Div.) ("The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of his employees."), *appeal denied*, 73 N.Y.2d 702, 537 N.Y.S.2d 490, 534 N.E.2d 328 (1988). In order to prove this tort, however, plaintiff must show assault or professional incompetence on the part of the negligently hired and retained employee resulting in personal injury to the plaintiff. *See, e.g., id.* (claim against company for negligently hiring and retaining an employee who struck and permanently injured plaintiff during an altercation); *Mon v. City of New York*, 78 N.Y.2d 309, 574 N.Y.S.2d 529, 579 N.E.2d 689 (1991) (claim for personal injuries sustained by plaintiffs when they were shot by a probationary police officer); *Vincenzino v. Calvosa*, 151 Misc.2d 95, 572 N.Y.S.2d 611 (Sup.Ct.1991) (claim for severe personal injuries and emotional distress when defendant pointed loaded gun at plaintiff during an argument); *De Leon v. Hospital of Albert Einstein College of Medicine*, 164 A.D.2d 743, 566 N.Y.S.2d 213 (App.Div.1991) (plaintiff injured during birth by incompetent nurse); *Haddock v. City of New York*, 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d 987 (1990) (nine-year-old child raped by Parks Department employee); *Aubry v. General Accident Ins.*, 152 A.D.2d 973, 544 N.Y.S.2d 765 (App.Div.1989) (death of claimant result of seeing his son become ill from inhaling poisonous fumes created by an incompetent welder); *Ott v. Barash*, 109 A.D.2d 254, 491 N.Y.S.2d 661 (App.Div.1985) (claimant injured when she was thrown from a horse frightened by incompetent groundskeeper); *Ruggerio v. Aetna Life & Casualty Co.*, 107 A.D.2d 744, 484 N.Y.S.2d 106 (App.Div.1985) (accident arising from negligent hiring of unqualified and incompetent cab driver).

Plaintiff does not allege that defendants assaulted her or caused her personal injury. Thus, regardless of what facts are ultimately proven by plaintiff, she could not, as a matter of law, establish a claim for negligent hiring and retention of an employee under New York law. Accordingly, plaintiff's negligence claim is dismissed.

### B. Abusive and Malicious Termination of Employment

■ Plaintiff's second state law claim is for abusive and malicious termination of employment. This tort is not recognized in New York. *See Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 233, 448 N.E.2d 86, 87 (1983) ("This court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge of an employee...."); *see also Spence v. Maryland Casualty Co.*, 803 F.Supp. 649, 672 (W.D.N.Y.1992), *aff'd.* 995 F.2d 1147 (2d Cir.1993); *Mayer v. Morgan Stanley & Co.*, 703 F.Supp. 249, 254 (S.D.N.Y.1988). Accordingly, plaintiff's claim for abusive and malicious termination is dismissed.

### C. Intentional Infliction of Emotional Distress

Plaintiff's third state law cause of action is for intentional infliction of emotional distress. Although the complaint is poorly drafted in setting forth this claim, it nevertheless manages to allege the four elements of the tort: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993). Therefore, the claim for intentional infliction of emotional distress meets the liberal pleading requirements of Rule 8. *See* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

■ Defendants contend that Ms. Brown's claim for emotional distress is time-barred by the one year statute of limitations on such actions in New York, N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1990). Ms. Brown was

terminated by BCCMG on July 3, 1990 and filed her complaint with the EEOC shortly thereafter. The EEOC issued its finding of no probable cause and its "right-to-sue" letter on September 27, 1991. On December 6, 1991, Ms. Brown filed her complaint with this Court.

Under 42 U.S.C. § 2000e–5(b), before a Title VII claim may be filed in federal court, the EEOC is authorized to investigate charges of discrimination and to dismiss the complaint if it finds no reasonable cause to believe the charges are true. If the charges are dismissed, and the EEOC fails to pursue its other options, including filing a civil action or entering into a conciliation agreement, the EEOC shall give notice to the aggrieved party in the form of a "right-to-sue" letter. 42 U.S.C. § 2000e–5(f)(1). Within 90 days of the EEOC's issuance of the letter, the complainant may bring a civil action in federal court based on the alleged unlawful employment discrimination.

Ms. Brown filed her complaint with this Court on December 6, 1991, within 90 days of the EEOC's issuance of the "right-to-sue" letter. Thus, her Title VII claim is timely. As discussed above, she is entitled to have her state claim resolved together with her federal claim in federal court under the Court's supplemental jurisdiction, and was obligated to delay bringing her federal claim pending the issuance of a "right-to-sue" letter by the EEOC. Furthermore, the Court lacked jurisdiction to hear plaintiff's state law claim until such time as plaintiff was able to bring that claim pendent to her federal claim. Hence, the Court finds that the statute of limitations on plaintiff's emotional distress claim was tolled during the period that her complaint was being considered by the EEOC.

To hold that the statute of limitations on plaintiff's state law claim was not tolled would obligate plaintiffs in Ms. Brown's position to bring their state law claims in a separate action in state court regardless of the degree to which such proceedings would result in duplication and judicial inefficiency, or, alternatively, to forego their state law claims. Such a rule would substantially undermine the purposes of Title VII, which affords the EEOC the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution prior to the commencement of litigation. Title VII furthers the goal of eliminating employment discrimination through the use of "conference, conciliation, and persuasion," rather than litigation. 42 U.S.C. § 2000e–5(b); *See Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 879–80 (2d Cir.1981). Moreover, such a result would wholly negate the judicial efficiency encouraged by 28 U.S.C. § 1367's grant of supplemental jurisdiction. Thus, the statute of limitations was tolled and, therefore, plaintiff's emotional distress claim is not time barred.

Next, defendants contend that Ms. Brown's claim for intentional infliction of emotional distress must be dismissed because, even if all factual assertions in her complaint are assumed to be true, they fail to establish conduct that is sufficiently outrageous and uncivilized to meet the minimum requirements necessary to make out this cause of action in New York. The New York standard for intentional infliction of emotional distress is indeed a strict standard. *See Murphy v. American Home Prods. Co.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983). Nevertheless, defendants' argument would be more appropriately couched as a motion for summary judgment than as a motion to dismiss for failure to state a claim, because it calls upon the Court to evaluate the evidence presented in plaintiff's complaint rather than to evaluate the legal feasibility of plaintiff's claim.

█ In evaluating a motion to dismiss for failure to state a claim, the Court must read the complaint "generously, and draw all reasonable inferences in favor of the pleader." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). As the Second Circuit has stated, the court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991). Plaintiff has alleged conduct on the part of defendants that she claims caused her emotional distress, and it

**112**

is a question of fact whether conduct is extreme and outrageous. *Halio v. Lurie,* 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (App.Div. 1961). It is therefore conceivable that Ms. Brown may ultimately prove that defendants' conduct was extreme and outrageous, even under New York's stringent standard. Accordingly, defendants' motion to dismiss Ms. Brown's claim for intentional infliction of emotional distress is denied.

## CONCLUSION

IT IS HEREBY ORDERED that defendants' motion to dismiss plaintiff's claims under 42 U.S.C. § 1981 and § 1983 is GRANTED.

IT IS FURTHER ORDERED that defendants' motion to strike from the complaint plaintiff's demand for compensatory and punitive damages and for a jury trial under 42 U.S.C. § 2000e is hereby GRANTED.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's state law claims for lack of jurisdiction is hereby DENIED.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's claims for negligent hiring and retention of an employee and for malicious and abusive termination of employment is hereby GRANTED.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress is hereby DENIED.

SO ORDERED.