**Lawrence PARKER, Plaintiff,**

**v.**

**GENEVA ENTERPRISES, INC., t/a
Rosenthal Nissan–Mazda,
Defendant.**

**Civil Action No. 96–1795–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 6, 1997.

Farahe Paul Maloof, Washington, DC, for Plaintiff.

Spiros Paul Fotopoulos, Stephen W. Robinson, McGuire, Woods, Battle & Boothe, McLean, VA, for Defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

Plaintiff, Lawrence Parker ("Parker"), filed a Complaint on or about December 20, 1996 against Geneva Enterprises, Inc. t/a Rosenthal Nissan/Mazda ("Geneva") and Mr. Steve Daniel, the dealership general manager at the time, alleging race discrimination under Title VII, discrimination based on a perceived disability under the Americans With Disabilities Act, wrongful discharge in violation of Virginia law, and negligent retention. On February 24, 1997, pursuant to Defendants' Motion to Dismiss, this Court dismissed Plaintiff's cause of action for wrongful discharge in violation of Virginia law, the negligent retention claim, and Mr. Daniel as an individual defendant. Plaintiff subsequently filed an Amended Complaint, alleging a cause of action for negligent hiring, based on essentially the same facts as the dismissed negligent retention claim.

Geneva moves for summary judgment on all claims. The Court finds there are no material facts in dispute and this case is ripe for summary judgment.

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.

Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon the bald assertions of his pleadings. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (citations omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317 at 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff must raise an issue of material fact for each of the *prima facie* elements of his claims. Plaintiff may not rest upon mere allegations in his pleadings but, instead, must set forth specific facts that show there is a genuine issue of material fact. *Celotex*, 477

U.S. at 324; *Allstate Financial Corp. v. Financorp. Inc.,* 934 F.2d 55 (4th Cir.1991); *Goldberg v. B. Green & Co., Inc.,* 836 F.2d 845, 847–48 (4th Cir.1988).

Plaintiff alleges that Geneva discriminated against him on the basis that Geneva perceived him as having a disability because he had a prosthetic eye.

■ The ADA mandates that "no covered entity shall discriminate against a 'qualified individual with a disability.'" 42 U.S.C. § 12112(a). In *Ennis v. Nat. Ass'n of Bus. and Educational Radio, Inc.,* 53 F.3d 55 (4th Cir.1995), the Fourth Circuit held that the burden shifting framework of Title VII applies to ADA cases where the employer asserts that the termination decision was motivated by legitimate reasons unrelated to the disability. Under *Ennis,* to establish a *prima facie* case of disability discrimination, the plaintiff must show (1) he was disabled; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of discrimination.

If Plaintiff establishes a *prima facie* case, a presumption of discrimination arises that may be rebutted by Geneva's showing of a legitimate non-discriminatory reason for the dismissal. *Ennis,* 53 F.3d at 58. Plaintiff then bears the burden of proving by a preponderance of the evidence that Geneva's articulated reason is pretextual. *Id.* At all times, the burden of proof and ultimate burden of proving discrimination rests with Plaintiff. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The ADA's definition of "disability" includes an individual who is "regarded as having a physical or mental impairment that substantially limits one or more of his major life activities." 42 U.S.C. § 12102(2). In order to qualify as "disabled" under this definition. Plaintiff must establish that he was regarded by Geneva as having (1) a physical or mental impairment; (2) that limits a major life activity; and (3) the limitation is substantial. *Smaw v. Commonwealth of Virginia Dept. of State Police,* 862 F.Supp.

1469, 1472 (E.D.Va.1994). In this case, Plaintiff cannot establish that he was perceived as "disabled" by Geneva because he cannot show that Geneva perceived his prosthetic eye as "substantially limiting" a major life activity.

According to the regulations implementing the ADA, the inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i). An employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job. *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986); *see also Jasany v. U.S. Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985) (stating that "an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment otherwise, was not substantially limiting within the meaning of the statute").

■ The undisputed facts establish that Plaintiff is not disabled for purposes of the ADA. Even assuming that Plaintiff's prosthetic eye constitutes a physical impairment, it was not an impairment perceived by Geneva as substantially limiting Plaintiff's ability to pursue employment in the sales business.

Plaintiff admitted that his perceived disability claim rests entirely upon four alleged comments made during and after his employment at the Rosenthal Nissan/Mazda dealership and an altercation between the Plaintiff and an employee of a subcontractor of the dealership: (1) an alleged mid-January, 1996 comment by Mr. Daniel, the general manager at the Rosenthal Nissan/Mazda dealership, in which Mr. Daniel allegedly asked Plaintiff why he was wearing tinted glasses at the dealership (the "mid-January incident"); (2) an alleged statement made by Mr. Daniel at a February 13, 1996 sales meeting in which he allegedly stated that "he wouldn't buy a car from one wearing glasses and their eyes batting up and down in their head and walking a certain way, sort of like a thug walked" (the "February 13 incident"); (3) an altercation at the dealership between Plaintiff and

an individual not employed by Geneva during which they fought after the individual allegedly pointed at Plaintiff's eye and grabbed his crotch; (4) an alleged statement on February 23, 1996 by Mr. Matt Carr in which Mr. Carr allegedly said to a co-worker that Plaintiff "can't cut out the ads because he has only one working eye" (the "February 23 incident"); and (5) a statement allegedly made on February 28, 1996 by Mr. Carr to Mr. Daniel in which Mr. Carr allegedly stated "we don't need any one-eyed niggers working here" (the "February 28 incident"). None of these alleged comments, however, establish that Geneva perceived Plaintiff's prosthetic eye as substantially limiting his ability to pursue employment in the sales industry.

With regard to the mid-January incident, Plaintiff alleges that Mr. Daniel asked plaintiff why he was wearing tinted glasses while Plaintiff was selling a car and in front of other employees. Plaintiff alleges that Mr. Daniel's comment was "inappropriate" because he said it in front of others. Even assuming that Mr. Daniel made the comment in front of others, the comment in no way reflects any perception on the part of Geneva or Mr. Daniel that Plaintiff is unable to perform his job or pursue employment as a car salesman. Indeed, Mr. Daniel noted that at the time he made this statement, he had never met Plaintiff before and discontinued the conversation after Plaintiff advised him of his eye condition.

■ Mr. Daniel's alleged statement at the February 13th sales meeting is also no evidence that Geneva perceived Plaintiff as disabled. Even assuming Mr. Daniel made this statement, it is undisputed that Mr. Daniel was addressing a large group of people, including the sales staff, the management staff, and the finance department. Furthermore, it is undisputed that Mr. Daniel never mentioned Plaintiff's name during this meeting and never referred to Plaintiff's prosthetic eye. Moreover, even assuming Plaintiff recollection of Mr. Daniel's statement is correct, the statement is a reflection of Mr. Daniel's concern that the car salesmen should not wear sunglasses and not walk unprofessionally around the dealership.

■ The altercation in the cleanup area also does not establish that Geneva perceived Plaintiff as disabled. Even assuming Plaintiff's version of the incident is accurate, it is undisputed that the incident involved an altercation between Plaintiff and an individual not employed by Geneva, as opposed to a supervisor or even a Geneva employee. In addition, it is undisputed that Plaintiff never discussed this incident with Mr. Daniel or any immediate supervisor and never heard any comments by Mr. Daniel or any other manager or supervisor about the incident. Finally, it is undisputed that after becoming aware of this incident, Geneva allowed the Plaintiff to return the work.

■ The February 23 incident is also not any indication that Geneva perceived Plaintiff as disabled. It is undisputed that Mr. Carr was not Plaintiff's supervisor at the time that this statement was allegedly made. In addition, it is undisputed that cutting out advertisements was not part of Plaintiff's job duties. Accordingly, the statement, even if true, does not indicate that Geneva perceived Plaintiff as unable to pursue employment or perform his duties as a car salesman.

■ The February 28 incident is similarly insufficient to establish that Geneva perceived Plaintiff as disabled. Even if true, this statement, while insensitive, in no way reflects that Geneva regarded Plaintiff as unable to perform his duties as a car salesman. In addition, it is undisputed that Plaintiff voluntarily left his position with Geneva on February 23, 1996—five days before this statement was allegedly made by Mr. Carr.

■ Plaintiff's disability claim also fails because he voluntarily resigned from his position at Geneva, and did not suffer from an adverse employment action. It is well settled that "in a suit alleging disparate treatment, a plaintiff must ultimately show that he or she was subject to an adverse employment action ..., which action was more likely than not, motivated by [a discriminatory reason]." *Hooper v. State of Maryland*, No. 94–1067, 1995 WL 8043 at *3 (4th Cir.1995); *Gairola v. Commonwealth of Virginia Dept. of General Services*, 753 F.2d 1281, 1286 (4th

Cir.1985). If the employment action was voluntarily taken by the employee, then the action cannot be said to have been motivated by a discriminatory reason on the part of the employer and the employee cannot establish a *prima facie* case. *Hooper* at \*3–4, *Stone v. University of Maryland Medical Sys. Corp.*, 855 F.2d 167, 173 (4th Cir.1988).

It is undisputed that Plaintiff left his job at Geneva on February 23, 1996 of his own volition. It is further undisputed that no one at Geneva ever told Plaintiff that he was fired or that he could not return to work. Plaintiff admits that when he left his employment on February 23, he believed that he could return to work if he so wanted. Under such circumstances, no adverse employment action can be attributed to Geneva and summary judgment is appropriate.

Plaintiff apparently alleges that he was Constructively discharged from his job at the Rosenthal Nissan/Mazda dealership. Specifically, plaintiff alleges that the alleged comments made during and after his employment, rendered his job situation so intolerable that he was forced to quit. However, based on the law of this Circuit and the undisputed facts of this case, Plaintiff's constructive discharge claim fails as a matter of law.

■ A constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). A plaintiff alleging constructive discharge must prove (1) the "deliberateness" of the employer's action and (2) the "intolerability" of the working conditions. *Id.*, *see Blistein v. St. John's College*, 74 F.3d 1459, 1468 (4th Cir.1996); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir.1995). "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." *Paroline. v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir. 1989) (Wilkinson J., dissenting), vacated in part, 900 F.2d 27 (1990) (*en banc*).

In this case, Plaintiff cannot establish that he was constructively discharged from his job at the Rosenthal Nissan/Mazda dealership because of any alleged comments about his prosthetic eye. Plaintiff cannot establish that the alleged comments, even if true, were (1) made with the intent to force Plaintiff to quit and (2) of such character as to make Plaintiff's working conditions objectively intolerable so that Plaintiff had no choice by to resign. As a result, summary judgment is appropriate.

■ With regard to the mid-January incident, this comment by Mr. Daniel constitutes an innocent and legitimate question concerning the reason why Plaintiff was wearing tinted glasses. It is undisputed that this alleged question was asked shortly after Plaintiff returned to work from leave and shortly after Mr. Daniel became the new general manager at the dealership. Plaintiff has not nor cannot establish that Mr. Daniel asked this alleged question with the intent to make Plaintiff quit. Furthermore, this alleged question would clearly not require the reasonable person to feel compelled to quit.

■ With regard to the February 13 incident, assuming Mr. Daniel made this comment, it is undisputed that Mr. Daniel never mentioned Plaintiff's name, never mentioned Plaintiff's prosthetic eye, and was discussing other aspects of professionalism that did not necessarily pertain to the Plaintiff or the wearing of tinted glasses. Furthermore, it is undisputed that Plaintiff never complained to anyone at Geneva regarding this incident.

■ Likewise, at the time of the February 23 incident it is undisputed that Mr. Carr was not Plaintiff's immediate supervisor at the time this alleged statement was made. Plaintiff admits that his supervisors Ms. Haynes and the unnamed individual who replaced her never made any derogatory comments about his prosthetic eye.

The Plaintiff cannot establish that any of these alleged comments or incidents were undertaken by Geneva with the specific purpose of forcing the Plaintiff to quit. Furthermore, by virtue of Plaintiff's consistent failure to complain, the general nature and limited number of these comments as well as

the exact statements themselves, it is clear that a reasonable person would not have felt compelled to resign because of these alleged comments. The limited number and innocuous nature of these alleged incidents is simply insufficient as a matter of law to rise to the level of a constructive discharge. *See Goodman v. State of Maryland Dept. of Social Services*, Civil Action No. 94–2133, 1995 WL 501355 at *3 (4th Cir. August 23, 1995).

Plaintiff further alleges that he was discriminated against because of his race. A Title VII plaintiff has the burden of proving that his employee "intentionally" discriminated against him because his a member of a protected group. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To assist in this determination, the Supreme Court has assembled a three stage. proof scheme in Title VII discrimination cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The *Hicks* Court held that a plaintiff cannot make its "explanation of intentional discrimination" believable be merely proving that an employer's asserted nondiscriminatory reason for the challenged action was in fact false. Rather, the plaintiff must produce evidence sufficient to persuade the fact finder that "the defendant intentionally discriminated against the plaintiff."

The law in this Circuit concerning the establishment of a prima facie case in a claim of an alleged discriminatory termination is well settled. Plaintiff must establish:

(1) that he was a member of a protected class;

(2) that he was qualified for his job and his performance was satisfactory;

(3) that, in spite of his qualifications and performance, he was fired; and

(4) that the position remained open to similarly qualified applicants after his dismissal.

*Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Holmes v. Bevilac-*

*qua*, 794 F.2d 142 (4th Cir.1986) (*en banc*); and *Smith v. University of North Carolina*, 632 F.2d 316 (4th Cir.1980).

If Plaintiff establishes a *prima facie* case, a presumption of discrimination arises that may be rebutted by Geneva's showing of a legitimate non-discriminatory reason for the dismissal. *Cerberonics*, 871 F.2d at 456. Plaintiff then bears the burden of proving by a preponderance of the evidence that Geneva's articulated reason is pretextual. *Id.* At all times, the burden of proof and ultimate burden of proving discrimination rests with Plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ It is undisputed that Plaintiff cannot establish the third and fourth elements of the *prima facie* case, specifically that despite his satisfactory performance his employment was terminated and that the position remained open to similarly qualified applicants after Plaintiff left his job. The undisputed facts establish that Plaintiff voluntarily abandoned his position with Geneva. Plaintiff admitted on several occasions that he left his position at the Rosenthal Nissan–Mazda dealership on February 23, 1996 on his own volition. Plaintiff's abandonment of his position at the Rosenthal Nissan/Mazda dealership precludes him from establishing a *prima facie* case.

■ Similar to his perceived disability claim, Plaintiff alleges that he was constructively discharged because of his race. In support of this claim, Plaintiff relies upon (1) the February 28 incident in which a third party told Plaintiff that Mr. Carr had said to Mr. Daniel that "we don't need no one-eyed nigger working here anyway" and (2) an alleged rumor overheard by another employee that Geneva was attempting to "whiten up" the dealership.

These statements, if true, do not establish that Plaintiff was constructively discharged as a matter of law. With regard to the February 28 incident, it is undisputed that Plaintiff's decision to quit his employment occurred on February 23, 1996. Any statements occurring after February 23 are not relevant to Plaintiff's claim of constructive

discharge. Moreover, it is undisputed that Plaintiff never complained to anyone at Geneva after hearing this alleged statement. With regard to the alleged rumor that Geneva wanted to "whiten up" the dealership, it is undisputed that Plaintiff never complained or discussed this rumor with any of his supervisors. *Id.* Moreover, Plaintiff admitted that he considered this rumor to be "gossip" and never viewed the rumor seriously. Accordingly, neither of these statements can form the basis of a constructive discharge claim and summary judgment is proper. *See Goodman, supra.*

Plaintiff's deposition testimony establishes that he has no probative, admissible evidence other than his own opinion or perception to establish that Geneva constructively discharged him because of his race. Without more, Plaintiff cannot establish a prima facie case of discrimination. *Mitchell v. Data General Corp.,* 12 F.3d 1310 (4th Civ.1993) *supra,* and *Cerberonics, supra.*

Plaintiff claims a cause of action for negligent hiring in that Geneva hired Mr. Daniel despite having knowledge of complaints of discrimination against him at his previous employer and an alleged history of making racial remarks. In addition, Plaintiff alleges that Geneva was aware of discrimination complaints against Daniel when he was employed at another Rosenthal store and "despite actual or constructive knowledge of Mr. Steve Daniel's actions towards blacks and other minorities, defendant Rosenthal hired Mr. Steve Daniel for the Nissan–Mazda dealership in Virginia."

Plaintiff's claim for negligent hiring must dismissed as Virginia law would not recognize such a claim based on the alleged facts where the alleged conduct was racial discrimination and did not involve serious and significant physical injury.

 Negligent hiring imposes liability on an employer for placing an unfit person in an employment situation involving an "unreasonable risk of *harm* to others." *See J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 211, 372 S.E.2d 391 (1988). However, the Virginia Supreme Court has determined that "an unreasonable risk of harm" element requires the threat of serious and significant physical injury. *Davis v. Merrill,* 133 Va. 69, 112 S.E. 628 (1922), and *Weston's Adm'x v. Hospital of St. Vincent of St. Paul,* 131 Va. 587, 107 S.E. 785 (1921).

*Victory Tabernacle,* the plaintiff alleged that her ten year-old daughter had been "repeatedly raped and sexually assaulted" by an employee of the defendant and that "when Victory hired [this employee], it knew, or should have known, that he had recently been convicted of aggravated sexual assault." *Victory Tabernacle,* 236 Va. at 207, 372 S.E.2d 391.

In *Davis,* the court allowed an action for negligent hiring where a gateman for the defendant employer shot and killed a woman after the woman asked the gateman to raise a gate so that she could pass. The court allowed the plaintiff to maintain her action because "there was ample evidence tending to prove that the assailant 'was a man who would become highly incensed over a very simple matter and get dangerously angry from slight provocation.'" *Id.* (quoting Davis at 79).

Other courts have determined that a cause of action for negligent hiring of an employee who allegedly engaged in racial discrimination or harassment is not actionable. *See Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105 (S.D.N.Y.1993).

In *Brown,* the plaintiff sued the defendant corporation and her supervisor, alleging, *inter alia,* race and national origin discrimination. The plaintiff also alleged that the defendant negligently hired and retained the defendant supervisor in that the defendant hired and retained this "contentious" supervisor knowing of her discriminatory tendencies. *Id.* at 109. The United States District Court for the Southern District of New York dismissed the plaintiff's claim for negligent hiring and retention noting that the plaintiff "does not allege that defendants assaulted her or caused her personal injury. Thus, regardless, of what facts are ultimately proven by plaintiff, she could not, as a matter of law, establish a claim for negligent hiring and retention of an employee under New York law." *Id.* at 110; *see also Perry v. Burger King Corp.,* 924 F.Supp. 548, 552–53

(S.D.N.Y.1996) (similarly dismissing a negligent hiring claim based upon racial discrimination and harassment and noting that "most of the cases in which this claim has been sustained involve significant physical injury").

Similarly, in *Leidig v. Honeywell, Inc.*, 850 F.Supp. 796 (D.Minn.1994), the plaintiff sued his former employer for, *inter alia*, age discrimination and negligent retention of employees who the employer "knew or should have known of their propensity to engage in discriminatory behavior." *Id.* at 806. The United States District Court for the District of Minnesota granted summary judgment to the employer on the negligent retention claim. The *Leidig* court emphasized that "the case law strongly suggests that this duty not to retain employees with 'known dangerous proclivities' is limited to circumstances involving a threat of physical injury." *Id.* (citations omitted).[1]

In this case, Plaintiff has not alleged any facts indicating that he suffered serious or significant physical injury so as to maintain an action for negligent hiring under Virginia law. Like in *Brown*, Plaintiff has not alleged any facts indicating that anyone at Geneva. Specifically, Mr. Daniel, exhibited dangerous proclivities or posed an unreasonable risk of harm to him. More importantly, Plaintiff conceded at his deposition that he does not have any facts to support such a claim.

Plaintiff must establish a genuine issue of material fact that before hiring Mr. Daniel or transferring him to the Rosenthal Nissan–Mazda store, Geneva knew or should have known of past discriminatory conduct by Mr. Daniel which indicated that Mr. Daniel posed an unreasonable risk of harm to Plaintiff. Plaintiff is unable to provide such evidence and summary judgment is appropriate.

---

1. While *Leidig* involved a negligent retention claim and not a negligent hiring claim, the rationale of *Leidig* would logically apply to either cause of action. Indeed, the *Leidig* court appears to use the terms interchangeably.